UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

THE PRESERVE AT CONNETQUOT          :     Civil Action No. _____
HOMEOWNERS ASSOCIATION, INC.,       :
Individually and on Behalf of All Others   :
Similarly Situated,                 :
                                    :     CLASS ACTION COMPLAINT
                                    :
                    Plaintiff,      :
                                    :
                                    :
        vs.                         :
                                    :
                                    :
COSTCO WHOLESALE CORPORATION,       :
CVS HEALTH CORPORATION,             :
KIMBERLY-CLARK CORPORATION, THE     :
PROCTER & GAMBLE COMPANY,           :
TARGET CORPORATION, WALGREENS       :
BOOTS ALLIANCE, INC. and WAL-MART   :
STORES, INC.,                       :
                                    :
                                    :
                    Defendants.     :
                                    :
———————————————————— x     DEMAND FOR JURY TRIAL

The Preserve at Connetquot Homeowners Association, Inc. ("Plaintiff") brings this action on behalf of itself and all other similarly situated entities that own and/or operate sewage or wastewater treatment plants or facilities, including homeowners associations, municipalities and wastewater districts (collectively, "STP Operators"), and alleges upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named Plaintiff (which are alleged on personal knowledge), as follows:

## NATURE OF THE ACTION

1.     This class action is brought against defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), Kimberly-Clark Corporation ("Kimberly-Clark"), The Procter & Gamble Company ("Procter & Gamble"), Target Corporation ("Target"), Walgreens Boots Alliance, Inc. ("Walgreens") and Wal-Mart Stores, Inc. ("Wal-Mart") (collectively, "Defendants") to recover for the harm being caused by Defendants' deceptive, improper or unlawful conduct in the design, marketing, manufacturing, distribution and/or sale of wipes labeled as "flushable." Purportedly flushable wipes include all moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer systems and/or biodegradable (herein referred to as "Flushable Wipes").

2.     Flushable Wipes do not break up into small pieces or disintegrate during or soon after flushing, and thus are not flushable under any definition of the term – even under Defendants' own industry guidelines that were specifically designed for their products to pass. They certainly do not break down as easily as toilet paper, which has served as the benchmark for flushability since the 19th century and begins to break apart once it contacts water or during the flush cycle. Unlike toilet paper, Flushable Wipes are designed to hold up under soaking in water and propylene glycol lotion,

and under the pressure of scrubbing.[1]  Flushable Wipes are created to be strong enough to do their job effectively.  These goals cannot be achieved if they disintegrate in water as easily as toilet paper and, therefore, "the very thing that makes a wet wipe good at its job makes it a problem once it's discarded."[2]

3.     Consumers use Defendants' Flushable Wipes the way they are marketed to the public, including discarding them in toilets and ultimately, into sewer systems.  Defendants' moist wipe products are designed, marketed, manufactured, distributed and/or sold by Defendants as safe to be flushed and are designated as "flushable" on product labeling, marketing materials, advertisements and/or Defendants' websites.  While many municipalities, wastewater districts and organizations throughout the country now advise the public to only flush human waste and toilet paper, most consumers purchasing Flushable Wipes are either unaware of such warnings or otherwise continue to believe Defendants' assurances that their Flushable Wipes are flushable.

4.     Because Defendants' Flushable Wipes are not in fact flushable, they cause serious problems for consumers and STP Operators alike.  Through the ordinary and directed use of Defendants' Flushable Wipes, Plaintiff and other STP Operators experienced clogging and other disruption of their sewage or wastewater treatment plants, pump stations, lift stations and/or sewer lines due to consumers flushing Flushable Wipes as direct by Defendants.  Indeed, wastewater industry officials have described Flushable Wipes' impact on wastewater systems as "***wreaking***

---

[1]     *See* Christopher Bonanos, *Public Enemy No. 2*, NEW YORK MAGAZINE, Oct. 4, 2013, http://nymag.com/news/intelligencer/flushable-wipes-2013-10/index1.html#print.

[2]     *Id.*

havoc,"[3] "*murder on [] sewers*,"[4] and "*a huge problem – an absolutely horrible problem*."[5]

5.    STP Operators' response to the Flushable Wipes problem is no surprise given that municipalities like New York City have spent "more than *$18 million* . . . on wipe-related equipment problems" alone over a recent five year period.[6] By one estimate, wet wipes are costing "*billions of dollars a year in worldwide maintenance*."[7] What is clear is that Flushable Wipes are contributing to maintenance and repair-related expenses borne by STP Operators, and there is no end in sight. As one wastewater official described it, "[w]ipes have shortened pumps' lives and transformed what it means to maintain a system."[8]

6.    Absent Defendants' actions, their Flushable Wipes would not be discarded in toilets and, in turn, would not damage, clog and/or disrupt  Plaintiff and Class members' (defined below) pump stations, lift stations, sewer lines and/or wastewater treatment plants' systems.  Flushable

---

[3]    Christina Hall, *Flushable wipes clogging sewer pumps and pipes in metro Detroit*, DETROIT FREE PRESS, Apr. 16, 2017, http://www.freep.com/story/news/local/michigan/macomb/2017/04/16/flushable-wipes-sewer-sinkhole-fraser-candice-miller/100368830/.

Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

[4]    truTV, *Adam Ruins Everything – Why Flushable Wipes Aren't Flushable*, YOUTUBE (Nov. 2, 2015) https://www.youtube.com/watch?v=TgHVO-RZ8c4.

[5]    Jenna Ross, *'Flushable' wipes can cost thousands to fix clogged pipes*, STARTRIBUNE, Apr. 6, 2015, http://www.startribune.com/flushable-wipes-can-cost-thousands-to-fix-clogged-pipes/298728221/.

[6]    Matt Flegenheimer, *Wet Wipes Box Says Flush. New York's Sewer System Says Don't*, THE NEW YORK TIMES, Mar. 13, 2015, https://www.nytimes.com/2015/03/15/nyregion/the-wet-wipes-box-says-flush-but-the-new-york-city-sewer-system-says-dont.html?_r=1.

[7]    Matt Kessler, *Are Wet Wipes Wrecking the World's Sewers?*, THE ATLANTIC, Oct. 14, 2016, https://www.theatlantic.com/science/archive/2016/10/are-wet-wipes-wrecking-the-worlds-sewers/504098/.

[8]    Ross, *supra* note 5.

Wipes, after entering sewer systems and STP Operators' systems, comingle with one another and render them identical or indistinguishable to one another.

7.      Defendants' conduct violates New York General Business Law §349 and constitutes strict products liability for defective design and failure to warn, as well as nuisance, trespass, breach of express and implied warranties, negligence and negligent misrepresentation.

## THE PARTIES

8.      Plaintiff is, and was at all relevant times, a homeowners association that runs a townhouse community – The Preserve at Connetquot ("The Preserve") – located on Eagle Circle in the hamlet of Bohemia in Suffolk County, New York. Plaintiff owns and/or operates a sewage treatment plant on-site at The Preserve. There are 40 units in The Preserve that are connected to Plaintiff's sewage treatment plant. As of March 2017, residents of The Preserve paid $410 per month for common charges, which includes funding the on-site sewage treatment plant. Part of the monthly payments are earmarked for a reserve account to pay for unexpected expenses, including over-budget maintenance expenses associated with the sewage treatment plant, if necessary. Plaintiff incurred expenses in connection with repairs, maintenance and/or other damage to its sewage treatment plant, and faces the continued threat of further repairs, maintenance and/or other damage caused by Defendants' manufacture, marketing and/or sale of Flushable Wipes.

9.      The following Defendants design, manufacture, market, distribute and/or sell (directly or indirectly) wipes products labeled as "flushable" that cause clogging and other damage to Plaintiff and Class members' sewage or wastewater treatment plants or facilities.

10.     Defendant Costco, a Washington corporation, together with its subsidiaries, operates membership warehouses. The company offers branded and private-label products in a range of merchandise categories, including Kirkland Signature, its generic line, under which Costco

manufactures and/or sells Kirkland Signature Moist Flushable Wipes. Headquartered in Issaquah, Washington, Costco common stock trades on the NASDAQ under the ticker symbol "COST."

11.    Defendant CVS, a Delaware corporation, together with its subsidiaries, provides integrated pharmacy health care services in the United States. CVS offers branded and private-label products in a range of merchandise categories, including Total Home, its generic line. CVS manufactures and/or sells CVS Total Home Flushable Moist Wipes, CVS Flushable Cleansing Wipes and CVS Ultra Soft Flushable Cleansing Wipes under its generic brand. Headquartered in Woonsocket, Rhode Island, CVS common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "CVS."

12.    Defendant Kimberly-Clark, a Delaware corporation, together with its subsidiaries, manufactures and markets personal care, consumer tissue, and health care products worldwide. The company operates in four segments: Personal Care, Consumer Tissue, K-C Professional, and Health Care. Kimberly-Clark manufactures and sells Flushable Wipes under the following brands: Cottonelle, Scott Naturals and Pull-Ups. Headquartered in Dallas, Texas, Kimberly-Clark common stock trades on the NYSE under the ticker symbol "KMB."

13.    Defendant Procter & Gamble, an Ohio corporation, together with its subsidiaries, manufactures and sells branded consumer packaged goods. Procter & Gamble operates through five segments: Beauty Care, Grooming, Health Care, Fabric & Home Care, and Baby & Family Care. The Baby & Family Care segment offers baby wipes, diapers, paper towels, tissues, and toilet paper under brand names such as: Bounty, Charmin, and Pampers. Procter & Gamble manufactures and sells Flushable Wipes under its Charmin and Pampers Kandoo brands. Headquartered in Cincinnati, Ohio, Procter & Gamble common stock trades on the NYSE under the ticker symbol "PG."

14.     Defendant Target, a Minnesota corporation, operates general merchandise stores in the United States.  Target offers household essentials, hardlines (consisting of music, movies, books, computer software, sporting goods, toys and electronics), apparel and accessories, food and pet supplies, and home furnishings and décor.  Target manufactures and/or sells Flushable Wipes under its generic, up&up brand.  Headquartered in Minneapolis, Minnesota, Target common stock trades on the NYSE under the ticker symbol "TGT."

15.     Defendant Walgreens, an Illinois corporation, together with its subsidiaries, operates a network of drugstores in the United States.  It provides consumer goods and services, pharmacy, and health and wellness services through drugstores, as well as through mail, and by telephone and online.  Walgreens manufactures and/or sells Flushable Wipes under its self-named, generic brand. Headquartered in Deerfield, Illinois, Walgreens common stock trades on the NASDAQ under the ticker symbol "WAG."

16.     Defendant Wal-Mart, a Delaware corporation, is a retail business offering a range of merchandise categories.   It offers candy, snack foods, tobacco, alcoholic and nonalcoholic beverages, and cleaning and institutional supplies; appliances, electronics, health and beauty aids, hardware, office supplies, toys, seasonal items, and automotive supplies; and dry and institutionally packaged foods.  Wal-Mart manufactures and/or sells Flushable Wipes under the Equate and Great Value brands.  The company has stores and distribution centers located throughout the United States. Headquartered in Bentonville, Arkansas, Wal-Mart common stock trades on the NYSE under the ticker symbol "WMT."

17.     Defendants, upon becoming involved with the manufacturing, distributing, advertising, marketing and/or sale of Flushable Wipes, know or should know that their representations regarding Flushable Wipes are false and misleading.

- 6 -

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this matter, pursuant to 28 U.S.C. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiff is a citizen of New York while at least one Defendant is a citizen of a different state.

19.     Venue properly lies in this District pursuant to 28 U.S.C. §1391(a), because Plaintiff resides and Defendants reside, or are found, have their principal place of business, have an agent, or have transacted substantial business within the Eastern District of New York within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the Eastern District of New York.

## FACTUAL ALLEGATIONS

**Background on the Flushable Wipes Industry**

20.     In 2001, *The New York Times* reported that Kimberly-Clark spent $100 million to develop a new flushable moistened toilet paper product and had budgeted another $40 million to market it.  At the time, J.P. Morgan Chase analyst commented on the effort, "[y]ou would not think of this as a category that they could do innovation, and here they are. . . .  They are swinging for a big one here."[9]

21.     While Kimberly-Clark first began selling a form of purportedly flushable wipes products in the mid-1990s, the launch of its Rollwipes flushable product in the early 2000s triggered

---

[9]     Juliane E. Barnes, *Kimberly-Clark to Sell Moistened Toilet Paper, THE NEW YORK TIMES*, Jan. 17, 2001, http://www.nytimes.com/2001/01/17/business/kimberly-clark-to-sell-moistened-toilet-paper.html.

competition by branded and private label companies who sought to enter the "flushable" space.[10] While the premoistened wipe-on-a-roll format proved unsuccessful, Kimberly-Clark reformatted the product as a sheeted wipe in a tub that was "flushable by size,"[11] marking the launch of Flushable Wipes as we know them today.  The only difference is that Kimberly-Clark and other companies that followed it now attempt, albeit unsuccessfully, to make their wipes break up or disperse naturally, or more commonly, with agitation in water.

22.     Kimberly-Clark's bet on the market paid off, and today the Flushable Wipes industry is growing at over twice the rate of all nonwovens and all nonwoven wipes.  By 2010, Flushable Wipes accounted for $796 million in sales, increasing to $1.4 billion in sales by 2015.  Sales are projected to reach $2.7 billion by 2020, indicating that the market is approximately doubling every five years.[12]

23.     The Flushable Wipes industry, however, is founded on one fundamental product flaw – Defendants' purportedly Flushable Wipes are not in fact flushable under any relevant definition or standard.  Rather, the basis for Defendants' flushable claims is that their products meet industry guidelines – namely, those of the International Nonwovens and Disposables Association ("INDA").

24.     INDA, also referred to as the Association of the Nonwoven Fabrics Industry, is an industry group that was created by the manufacturers and retailers of so-called flushable products. The group is funded by, and, upon information and belief, wholly controlled by, the manufacturers and retailers of so-called flushable products.

---

[10]  *See Key trends driving the Global Flushable Wipes Market*, SMITHERS PIRA, http://www.smitherspira.com/resources/2016/december/trends-driving-global-flushable-wipes-market (last visited June 26, 2017).

[11]  *Id.*

[12]  *Id*.

25.     INDA's members created sets of tests to back up their claims that products can be labeled as flushable or safe for sewer and septic systems.  The INDA tests do not, however, replicate real world conditions, and do not reflect real-world plumbing or sewer systems.  In fact, the INDA tests, upon information and belief, were not created to replicate real world conditions at all.

26.     The INDA tests do not adequately assess whether Defendants' Flushable Wipes products break apart in a reasonable period of time.  Rather, the INDA tests were created, upon information and belief, to ensure that the products manufactured and/or sold by INDA members, including Defendants, passed the tests.

27.     INDA developed various iterations of its guidelines or protocols for testing flushability.  The INDA testing guidelines, historically, excluded independent input from members of the wastewater community or any independent industry personnel.  At least one of the iterations of INDA's testing guidelines or protocols was not peer reviewed.  The exclusion of independent input from members of the wastewater community or any independent industry personnel was done, upon information and belief, because the wastewater community called for flushability guidelines that Defendants knew they could not meet.

28.     Over the course of changes to the iterations of INDA's testing guidelines, INDA, through its members, removed the word "dispersability."

29.     The INDA tests were created with knowledge or understanding that Flushable Wipes products could cause plumbing issues for homeowners and wastewater facilities.

30.     INDA did not, and does not, have an enforcement mechanism associated with its testing procedures.  Meaning, manufacturers or retailers of so-called flushable products could fail one or more tests and still label a product as flushable – without any ramifications whatsoever.

**No Test – Real or Fabricated – Can Support Labeling Wipes as Flushable or Safe for Plumbing or Wastewater Systems**

31.     Many items have been shown to clear a toilet and, perhaps, even a home's plumbing system that are not – and cannot be labeled – as flushable, including, for example, golf balls or matchbox cars.[13]  Those items are not flushable, because, despite the fact that the items *might* clear a toilet and despite the fact that they *might even* clear a home piping system, those items were not intended or manufactured to be discarded by being flushed down a toilet.  Those items will not break down in the toilet, in the plumbing system or at any point in the sewer system.  Rather, they arrive in tact at treatment facilities.

32.     Several definitions for the term flushable have been publicly presented in connection with the first-filed case associated with the challenge against manufacturers, retailers, advertisers or marketers of so-called flushable products,[14] including, for example:

(a)     the second edition of the INDA "flushability" guidelines, in addition to clearing toilets and drainage pipe systems, said "flushable" wipes needed to be "compatible with existing wastewater conveyance, treatment, reuse and disposal systems" and "[b]ecome unrecognizable in a reasonable period of time and be safe in the natural receiving environments";[15]

---

[13]     PlumbersSurplus, *American Standard Chamipon4 Flushing Demo*, YOUTUBE, https://www.youtube.com/watch?v=gaWDH16SqVs (last visited on June 26, 2017) (demonstrating an American Standard toilet's ability to clear 18 golf balls, at 0:45); MetcraftHET, *Flushing 40 Golf Balls*, YOUTUBE, https://www.youtube.com/watch?v=6Tk1I0u0SVs (last visited on June 26, 2017) (demonstrating an Metcraft HET toilet's ability to clear 40 golf balls); 105.7 the Point, *Will it Flush – Matchbox Cars*, YOUTUBE, https://www.youtube.com/watch?v=xV_1K_znAoE (last visited June 27, 2017) (demonstrating Kohler toilet's ability to flush matchbox cars, at 1:58).

[14]     *See Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (JBW)(RML) (E.D.N.Y.).

[15]     *E.g.*, *Manufacturer's Code of Practice on Communicating Disposal Pathways for Personal Hygiene Wet Wipes*, EDANA at 2 (Dec. 2008), http://www.edana.org/docs/default-source/default-document-library/manufacturers-code-of-practice.pdf?sfvrsn=4 (last visited June 26, 2017).

- 10 -

(b)        the third edition of the INDA guidelines stated that for a product to be "operationally defined as flushable," it must: (1) clear toilets and properly maintained drainage pipe systems when the supplier's recommended usage instructions are correctly followed; (2) pass through wastewater conveyance systems and be compatible with wastewater treatment, reuse and disposal systems without causing system blockage, clogging or other operational problems; and (3) is unrecognizable in onsite effluent disposal and municipal wastewater treatment systems and in digested sludge from wastewater treatment plants that are applied to soil;[16] and

(c)        the Federal Trade Commission guided, as part of its final consent order with Nice-Pak Products Inc. ("Nice-Pak") in October 2015, that flushable means a product must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment."[17]

(d)        in open and public testimony, Mr. Robert Villée, the Executive Director of the Plainfield Area Regional Sewerage Authority ("PARSA) and former chair of the Water Environment Federation ("WEF"), on July 21, 2015, stated that for a product to be labeled flushable, the "product should clear the homeowner's toilet and piping without causing problems and quickly begin to lose strength and/or disperse so it doesn't cause problems for either the homeowner []or the municipal sewer system."[18]

---

[16]    *See Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, EDANA Third Edition, (2013), https://www.njwea.org/wp-content/uploads/2014/05/2013-guidelines-for-assessing-the-flushability-of-disposable-nonwoven-product.pdf.

[17]    *In the Matter of Nice-Pak Products, Inc.,* No. C-4556, (F.T.C. Oct. 30, 2015) Decision and Order at 3 (the "Consent Order"), *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakdo.pdf.

[18]    The testimony was provided in two related cases against flushable wipes manufacturers pending in the Eastern District of New York – *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142

33.     The word flushable has long been understood to mean "suitable for disposal by flushing down a toilet,"[19] which meant it would clear the user's home plumbing system and then not harm any ensuing piping system – whether municipal, wastewater, sewer, septic or otherwise.

34.     PARSA last year joined more than 25 countries and several hundred organizations and municipalities to support an international position statement regarding so-called flushable wipes products.[20]

35.     The position statement concluded that: (1) only human waste and toilet paper should be flushed; (2) "[w]ipes labeled 'Flushable' based on passing a manufacturers' trade association guidance document should be labelled [sic] '**Do Not Flush**' until there is a standard agreed to by the water and wastewater industry"; (3) any product that might be labeled in the future as "flushable" should "pass a technical standard [which has been] developed and agreed to by the water and wastewater industry . . . [p]referably . . . under the banner of the International Standards Organisation (ISO)"; and (4) "[k]ey requirements for any standard include that the product:

(a) breaks into small pieces quickly;

(b) must not be buoyant; and

(c) does not contain plastic or regenerated cellulose and only contains materials which will readily degrade in a range of natural environments."[21]

---

(JBW)(RML) (E.D.N.Y.) and *Belfiore v. Procter & Gamble Co.*, No. 2:14-cv-04090 (JBW)(RML) (E.D.N.Y.).

[19]     *Flushable*, Merriam-Webster, http://www.merriam-webster.com/dictionary/flushable (last visited June 26, 2017).

[20]     *See* Water Environment Federation, *International water industry position statement on non-flushable and 'flushable' labeled products*, http://www.nacwa.org/docs/default-source/resources---public/2016-11-29wipesposition3dd68e567b5865518798ff0000de1666.pdf (last visited June 26, 2017).

[21]     *Id.*

36.    A product labeled as flushable must break apart or disperse in a reasonable period of time.  Toilet paper has historically been considered the benchmark for dispersability, because, as the director of facilities support services in Orange County has said, "[o]nly [ ] pee, poop and toilet paper" should be flushed "because those are the only things that sanitary sewers were really designed for in the old days."[22]

37.    Mr. Villée further attested, publicly at a hearing in the Eastern District of New York on July 21, 2015, and as recently as January 2017, that *there is no non-woven wipe product in the United States market, labeled as flushable, that meets any of the definitions of the word flushable*.

38.    WEF, a nonprofit association of water quality professionals, explained that in order for a product to be truly flushable, it must be dispersible:

> *The industry reference for dispersability is two-ply toilet paper* . . . [which] starts to break apart when the toilet is flushed and is indistinguishable in the wastewater system in a matter of seconds. . . .  *Anything labeled as flushable should start to break apart during the flush and completely disperse within 5 minutes*. . . .  Our mantra is, "It's not flushable if it's not dispersible."[23]

39.    There is no moist wipe product sold on the market, as of this filing, that can or should be, labeled as flushable.

40.    Numerous tests, all of which are available or otherwise known to Defendants, demonstrate and confirm that wipes labeled and sold as flushable and/or safe for sewer systems, will not actually break down or dissolve in any water district system.

41.    In a video posted by the WEF, pretreatment technician Tracy Stevens performed a "spin test" on multiple household products, including, one ply tissue, three ply tissue, regular toilet

---

[22]    *Popular bathroom wipes blamed for sewer clogs*, THE ORANGE COUNTY REGISTER (Sept. 23, 2013), http://www.ocregister.com/2013/09/23/popular-bathroom-wipes-blamed-for-sewer-clogs/.

[23]    Water Environment Federation, *Stop, Don't Flush That* (June 12, 2013), http://news.wef.org/stop-dont-flush-that/.

paper, plush toilet paper and multiple brands of Flushable Wipes.[24]  The test involved putting various products in beakers filled with water and containing a spinning blade to simulate flushing.[25]  The experiment showed that only toilet paper dispersed almost immediately.  After a few minutes the Flushable Wipes were still completely intact, with some cloudiness in the beaker that was attributed to lotion on the wipe.[26]  According to Stevens:

> If you define flushable as yes it will go down the toilet, then [ ] everything [tested] here is flushable.  If you define it as whether it will make it to the treatment plant, then [ ] all of these things could eventually make it to the treatment plant and maybe one time out of ten, or one time out of twenty they don't, and with hundreds of thousands of people out there flushing these things down one out of ten, one out of a hundred, one out of a thousand, they are going to cause trouble.[27]

42.    Consumer Reports performed its own independent disintegration tests on Flushable Wipes that simulated toilet flushing conditions.  They selected Procter & Gamble's Charmin "'Flushable Wipes, Kimberly-Clark's Cottonelle, Scott Naturals Flushable Wipes and Wal-Mart's Equate Flushable Wipes, all of which were labeled as flushable and safe for sewer systems.  A video clip depicting the tests showed that toilet paper broke down in about eight seconds, but the Flushable Wipes did not break down after ten minutes and, even more shocking, *still* had not broken down after being placed in a Kitchen Aid mixer for the same period of time.[28]  The video concludes, "our advice, don't flush flushable wipes."[29]

---

[24]  Water Environment Federation, *Will it Flush? Video*, YOUTUBE (Jan. 4, 2012) http://www.youtube.com/watch?v=SLTVqkXVvNk&feature=youtu.be.

[25]  *See id*.

[26]  *See id*.

[27]  *See id.* (at 5:32).

[28]  Consumer Reports, *Are Flushable Wipes Flushable?* (Jan. 2014), http://www.consumerreports.org/cro/video-hub/home--garden/bed--bath/flushable-wipes/16935265001/22783507001/.

[29]  *Id*.

- 14 -

43.     California's Orange County Sanitation District also conducted a test to evaluate the dispersability of allegedly flushable products.  A 2012 Staff Report noted that "field observations have found [flushable wipes] to be a cause of back-ups within the sewer system leading to sanitary sewer overflows, clogs at lift stations, and disruption within the treatment plant."[30]  The report also summarized the results of the district's flushability test: "[a]fter 24 hours the wipe remained intact and recognizable."[31]

44.     Mr. Villée of PARSA runs his own Flushable Wipes tests, including using a contraption he has dubbed the "PARSA Potty," which runs wipes through a simulated toilet and drain line to see whether the wipes disperse.[32]  Amazingly, a test he ran on Costco's Kirkland Flushable Wipes revealed a wipe completely intact after **_100 flushes_**,[33] proving convincingly that Costco's Flushable Wipes did not "break[] apart after flushing" as advertised.

45.     In Miami, Florida, news station CBS Miami investigated damage to pipes and sewer systems caused by Flushable Wipes.  It retained I-P-S testing, an independent testing facility, to conduct a slosh box test.  I-P-S put toilet paper, Flushable Wipes and non-flushable wipes through a slosh box test.  After one hour, the toilet tissue was barely visible, but the flushable and non-Flushable Wipes were fully intact.  After two hours, the toilet tissue had dispersed completely, but

---

[30]   Recyclebank, _Because You Asked: Can I Really Flush "Flushable" Wipes Down the Toilet?_ (July 9, 2014) https://livegreen.recyclebank.com/because-you-asked-can-i-really-flush-flushable-wipes-down-the-toilet.

[31]   _Id._

[32]   Alec Mackie, _What 2 Flush Summit 2015: CA Professionals Working to Get Wipes Under Control_, California Water Environment Association, (Jan. 3, 2017), http://cweawaternews.org/californian-professionals-play-important-role-in-what-2-flush-movement/.

[33]   _Id._; _see also_ National Association of Clean Water Agencies, _Toilets Are Not Trashcans!_, Southern       California       Alliance       of       Publicly       Owned       Treatment       Works, http://scap1.org/Pretreatment%20Reference/NACWA%20Disposable%20Wipes%20ppt.pdf (last visited June 27, 2017).

the Flushable Wipes had "shredded some, but visible chunks still remain[ed]."[34]  After three hours "a trace amount" of the Flushable Wipes remained.[35]

46.     In an apparent effort to demonstrate the "dispersability" of Cottonelle Flushable Wipes, Kimberly-Clark created a video using the "slosh box" text.[36]  According to INDA's recommended slosh box test, the procedure generally consists of placing a Flushable Wipe in an oscillating box filled with water for three hours.[37]  Subsequently the contents of the box are rinsed through a perforated plate sieve and analyzed.[38]  The video begins with the message: "What you are about to see is unaltered footage of how COTTONELLE FRESH Flushable Moist Wipes break down in water, so they'll never clog your toilet[,]" followed by Cottonelle's logo.[39]  According to the video, the slosh box test can be used to predict the Flushable Wipes' ability to disperse as they pass through pumps and pipes.  The video shows the beginning of a slosh box test, with the placement of Cottonelle Flushable Wipes into a tank filled with tap water.  The tank is then set into motion to "simulate the physical forces acting to disintegrate the product."[40]

47.     According to a timer appearing on the screen, the video then jumps to ~40-50 minutes later, at which time the Flushable Wipes has broken apart but is still not completely dispersed, and large chunks of the wipe are still clearly visible.  After ~95-110 minutes based on a timer appearing

---

[34] *The Trouble With Wipes in Your Pipes*, CBS MIAMI (Feb. 4, 2014), http://miami.cbslocal.com/2014/02/04/the-trouble-with-wipes-in-your-pipes/.

[35] *Id*.

[36] Cottonelle FRESH Flushable Moist Wipes, COSTCO WHOLESALE CORPORATION, http://video.costco.com/v/12429/cottonelle-fresh-flushable-moist-wipes/ (last visited June 27, 2017).

[37] edana, s*upra* note 16.

[38] *Id*.

[39] Costco, *supra* note 36.

[40] *Id.*

on the screen, the wipe is still not completely dispersed and although smaller, there are still multiple chunks of Flushable Wipes remaining.[41] Another Kimberly-Clark video using the slosh box test found that its wipes did not even start to break down into "smaller pieces" until 35 minutes had passed and were not dispersed into fibers until after three hours.[42]

48.    It is important to note that INDA's guidelines for flushability as they relate to the slosh box test allow for the wipes to undergo far more turbulent conditions than they would typically experience in sewer systems. Quoting a leading wastewater industry official, a *New York Times* article aptly described the problem with the manufacturers' version of the slosh box test:

> Critics say the test, which rocks wipes back and forth in a crate of water, does not properly mimic the wastewater system, allowing manufacturers to claim flushability for a product that may be too sturdy for treatment systems. ***The test is "a lot more turbulent than the flow that you find in a wastewater pipe*,**" said Cynthia Finley, director of regulatory affairs for the National Association of Clean Water Agencies. Flushed materials, she added, generally move "on very gentle slopes."[43]

49.    In 2016, the City of Vancouver (Washington) conducted a series of "in-sewer" tests of marked Flushable Wipes, dropping them into a manhole and observing their conditions at a downstream collection point. The study concluded that ***nearly all flushable wipes currently on the market in the United States* "cannot be considered safe to flush since they travel through real sewers intact, with no dispersion**."[44] The test found, for example, Flushable Wipes manufactured and/or sold by Kimberly-Clark (Cottonelle Safeflush Technology), Costco (Kirkland Ecoflush

---

[41]  *Id.*

[42]  Cottonelle, *Kimberly-Clark Flushable Wipes*, YOUTUBE (Sept. 13, 2013), https://www.youtube.com/watch?v=2FrXNWr2-xo&feature=youtu.be (last visited June 28, 2017, at 1:16).

[43]  Flegenheimer, *supra* note 6.

[44]  *See* Testimony of Cynthia A. Finley, Ph.D., Summary of Field Dispersion Tests, Attachment B at 9 (Mar. 15, 2017), *available at* http://www.nacwa.org/docs/default-source/resources---public/2017-03-15mdemtest.pdf.

Technology) and Target (up&up brand) completely or nearly completely intact.[45]  Wal-Mart's Great Value brand and Procter & Gamble's Fresh Mates brand Flushable Wipes were also found fully intact in the Vancouver test.

50.     Steve Blow of *Dallas News* also conducted his own testing of flushable wipes in which he dropped one Flushable Wipes sheet into a glass of water and "gave it a good swirl and waited."[46]  After an hour, Wal-Mart's Great Value brand Flushable Wipes were fully intact and "seemed strong as ever."[47]  After 12 hours in the water, the "sheet was still perfectly intact and required effort to pull apart."[48]  Mr. Blow also put Kimberly-Clark's Cottonelle wipes to the test and found that after an hour "there had been little change."[49]

**Flushable Wipes Wreak Havoc on Wastewater and Sewage Treatment Facilities Across the Country and Beyond**

51.     According to water district officials from across the country, from a practical perspective, not only are Flushable Wipes a major reason wastewater systems clog, they also wreak havoc on pumps and machinery in sewage or wastewater treatment plants.  Certain STP Operators have purchased and installed grinders, which act like garbage disposals for tearing up any solid debris flowing through sewage.  These grinders are often ineffective at processing Flushable Wipes because the material or fabric of Flushable Wipes inside the grinders gum-up the machinery.  Although grinders are capable of tearing through pieces of wood, Flushable Wipes can cause them to

---

[45]  *Id*. at 11-12.

[46]  Steve Blow, *Flushable wipes no friend to sewer pipes*, DALLAS NEWS (Sept. 2013), https://www.dallasnews.com/news/news/2013/09/27/flushable-wipes-no-friend-to-sewer-pipes.

[47]  *Id*.

[48]  *Id*.

[49]  *Id*.

grind to a halt by getting snagged on various parts of the grinder and building up until the grinder is completely clogged and inoperable.

52.     In essence, even if Flushable Wipes make it through home plumbing systems, when they are not fully disintegrated when they leave users pipes, they wreak havoc on sewage and wastewater systems. STP Operators across the country have suffered millions of dollars in damages due to Flushable Wipes. When Flushable Wipes infiltrate sewer systems and sewage and wastewater treatment plants, they become so comingled and intertwined that it is impossible to distinguish one Flushable Wipe from another.

53.     Cynthia Finley, Director of Regulatory Affairs for the National Association of Clean Water Agencies ("NACWA") commented on the effect of Flushable Wipes on STP Operators, saying "'[c]onsumers are being told by the packaging that these things are flushable'" and "[a]lthough the material might make it through the toilet and the pipes leading away from the house, they tend to clog up once in the sewer system. . . . That can cause huge headaches for the utilities."[50] According to Finley, the problem is occurring "'all over the country.'"[51]

### New York

54.     New York City reportedly spends a staggering $18 million *per year* to gather and dispose of debris, mostly consisting of Flushable Wipes, stuck in machinery in its 14 wastewater treatment plants.[52]

55.     Deputy Commissioner Vincent Sapienza of the New York Department of Environmental Protection ("D.E.P.") stated, ***"[t]he increase in clogs and problems we've been***

---

[50]   Kirsti Marohn, *Wipes in the pipes snarling sewers*, USA TODAY, July 17, 2013, http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/.

[51]   *Id.*

[52]   Kathlanne Boniello, *'Flushable' wipes clogging up drains citywide*, NEW YORK POST, Mar. 2, 2014, http://nypost.com/2014/03/02/flushable-wipes-clogging-up-drains-citywide/.

*having in New York City – it seems to almost correlate directly with the increase in sales of these flushable wipes*. . . .  They make it all the way to the plant and they just wrap themselves around our equipment.'"[53]

56.    The amount of debris removed from the plants – 110,000 cubic yards worth – is nearly double the amount removed 5 years ago.[54]  This coincides with the increase in popularity of Flushable Wipes.  As noted above, Vincent Sapienza was quoted as saying that he believes the increase in clogs and problems to New York City's sewer system and wastewater treatment plants correlates with the increase in sales of Flushable Wipes.

57.    Carter Strickland, commissioner of the New York City D.E.P., speaking about the problem Flushable Wipes cause, said "'[y]ou can safely say [it's costing us] millions of dollars.'"[55]  According to one report, "all around the city, huge gray-black masses of synthetic fiber, steeped in every foul fluid that's gone down the drain, are regularly being extracted, by hand, from [New York City's] pipes and pumps.  Jammed, snarled equipment frequently breaks down, causing 'a lot of downtime.'"[56]

58.    According to Strickland, the problem is that Flushable Wipes, unlike toilet paper, are meant to hold up under soaking and scrubbing, and are "'very, very strong, pound for pound, like [a] spiderweb.'"[57]

---

[53]    *Id*.

[54]    *Id*.

[55]    Bonanos, *supra* note 1.

[56]    *Id.*

[57]    *Id.*

### Pennsylvania

59.     Andrew Jantzer, General Manager of wastewater facilities at York City Wastewater Treatment Plant in Pennsylvania, has stated that "*[t]he issues with flushable wipes and other products that aren't toilet paper, are that they don't break down*.  Toilet paper turns into mush when it gets wet, everything else stays as it is."[58]  Jantzer continued:

> At our plant we have a five foot pipe that comes in and all of the sewage comes in that pipe.  The first thing it does is goes through these giant rakes, and it rakes out all of the flushable products that have not broken down.  The more we can get out at the head of the plant the better.  It causes a lot of havoc throughout the rest of the plant if it makes it through.  It clogs the pumps and channels and all kinds of tanks and other things that we have at the treatment plant.[59]

### Georgia

60.     In Columbus, Georgia, Columbus Water Works Senior Vice President of Water Resource Operations, John Peebles commented on the enormous amount of money flushing Flushable Wipes have cost the city and consumers.  Peebles stated, "[h]ere in Columbus, we're seeing a real increase in the number of man hours it takes to go and service these pumps. . . .  We're looking at probably over *500 man hours annually and a cost of over $100,000 a year* in pulling those pumps, and repairing those pumps, and putting them back into service."[60]  The problem, Peebles says, is "'[flushable wipes] make their way down the sewer system to our pump, and clog our pump before they break down.'"[61]

---

[58] *Flushable Wipes Clogging Pipes*, TODAY NEWS GAZETTE, Nov. 18, 2013, http://todaynewsgazette.com/flushable-wipes-clogging-pipes/.

[59] *Id*.

[60] *Flushable wipes may be costing Columbus Water Works customers extra money*, HAWAIINEWSNOW.COM, Dec. 11, 2013, http://www.hawaiinewsnow.com/story/24182046/flushable-toilet-wipes-may-be-costing-columbus-money.

[61] *Id.*

61.    To combat the clogs, the city of Columbus has installed two devices to cut up debris before it can clog pumps at a total cost of $250,000.[62]  Peebles estimates the cost of dealing with clogging caused by Flushable Wipes "'at maybe half a million dollars this year.'"[63]

### North Carolina

62.    In Raleigh, North Carolina, according to the city's environmental coordinator for wastewater, Marti Gibson, sewer overflows and backups are predominately caused by Flushable Wipes.  A Raleigh ordinance actually prohibits flushing anything except human waste, toilet paper and water.[64]  But that has not stopped the City from experiencing major backups related to Flushable Wipes.  In 2013, a "wad of wipes" caused a spill of almost 40,000 gallons of wastewater into a nearby creek.[65]

63.    More recently, in February 2017, Raleigh's public utilities department specifically blamed Flushable Wipes for clogging a sewage pipe off Glen Eden Drive that caused an "estimated 39,000 gallons of raw sewage to spill into an unnamed tributary of Crabtree Creek."[66]  Given that INDA headquarters are 12 miles way in Cary, North Carolina, INDA President David Rousse sent an unsolicited email to the city Public Utilities Director "decrying the city's assessment that flushable wipes were at fault," without any evidence to support his claim.[67]

---

[62]    *Id*.

[63]    *Id*.

[64]    Marohn, *supra* note 50.

[65]    Laura Northrup, *Raleigh Government: Flushable Wipes Aren't Flushable and Clog Sewers, So Cut It Out*, CONSUMERIST, Jan. 30, 2013, https://consumerist.com/2013/01/30/raleigh-government-flushable-wipes-arent-flushable-and-clog-sewers-so-cut-it-out/.

[66]    Richard Stradling, *City blames 'flushable wipes' for sewage clog*, THE NEWS & OBSERVER Feb. 7, 2017, http://www.newsobserver.com/news/local/counties/wake-county/article131194829.html.

[67]    Richard Stradling, *Are flushable wipes really flushable? Raleigh says no*, THE NEWS & OBSERVER, Feb. 21, 2017, http://www.newsobserver.com/news/local/counties/wake-

64.    The Public Utilities Assistant Director, T.J. Lynch, responded to David Rousse's email later that day by stating, "[w]e have no reason to make up stories about what we are finding in our collections systems across the country. . . .  But we do have a duty to let our customers know why their environment is being impacted and why their rates are going up."[68]  This dispute was aptly summarized in *The News & Observer* report as follows:

> The email exchange highlights a national conflict between the wipes industry and sewage utilities.  The industry claims it has developed products that do sufficiently break apart when flushed down the toilet. The utilities say the wipes remain intact long enough to get caught up in pipes and pump stations; they say they often become magnets for grease and oils that also get improperly washed down the drain to create what those in the sewage business call "fatbergs" that gum up pipes.

> \*        \*        \*

> Lynch says he's been to visit INDA and that INDA representatives have come to the public utilities department, without producing any real mutual understanding.[69]

### Texas

65.    According to Orlandos Spencer, a station operator with the City of Lufkin, Texas, Flushable Wipes are "'technically not flushable.  But, I mean, people flush them anyway.  The reason ***they're not flush-able is because they don't dissolve***.'"[70]  Jason Arnold, the director of the City of Lufkin's Water and Sewer Utilities Department explained how Flushable Wipes impacted the city and its wastewater equipment: "'[f]or whatever reason, those flushable wipes get in there and

---

county/article134022739.html ("'This is a convenient scapegoat to blame to meet the public reporting needs, but it is likely not the correct diagnosis.'").

[68]    *Id.*

[69]    *Id.*

[70]    Khyati Patel, *Using 'flushable' wipes? Reconsider what clogs up the sewer*, ABC 9 KTRE (Jan. 17, 2017), http://www.ktre.com/story/34282102/using-flushable-wipes-reconsider-what-clogs-up-the-sewer.

tear up a pump.  You're looking at over $10,000.  Now, that's not only real money where we're having to pay for that pump, but it is also a timely process.'"[71]

66.    Mary Gugliuzza, Media Relations Coordinator for Texas' Fort Worth Water Department, similarly stated that once Flushable Wipes make it to the city plant they must be separated and sent to dumpsters or landfills, which costs city residents thousands of dollars.[72] Because the Flushable Wipes do not break down fully as soon as they are flushed, they get caught up in various stages of the sewer system including pumps, lift stations and wastewater treatment plants.[73]  When the Flushable Wipes are removed, as shown below, they are completely comingled, blended and fungible.

67.    Below is an accurate depiction of what the San Antonio Water System maintenance crews cleaned out of a siphon system at the intersection of Eisenhower and Corinne in San Antonio, Texas, as reported by San Antonio Express-News:[74]

---

[71]    *Id*.

[72]    *See So-Called "Flushable" Wipes Causing Pipe, Sewer Problems*, CBS DFW (Oct. 4, 2013), http://dfw.cbslocal.com/2013/10/04/so-called-flushable-wipes-causing-pipe-sewer-problems/.

[73]    *Id.*

[74]    Sam Peshek, *'Flushable' wipes clean everything but sewers*, SAN ANTONIO EXPRESS-NEWS (Aug. 11, 2013), http://www.expressnews.com/news/local/article/Flushable-wipes-clean-everything-but-sewers-4724397.php#/6.



68.    The photo above demonstrates the fungibility of Flushable Wipes.

### Illinois

69.    In Germantown Hills, Illinois, Public Works Director, Rich Brecklin blames Flushable Wipes for clogging up village pumps.  Brecklin has stated, "'[i]f you look at these disposable wipes – some say disposable, some say flushable – if you notice, they're thicker.  They're woven tighter, and they're already wet and not falling apart. . . .  They don't go away.  They may make it down to the sewer plant on a gravity system, and then you've got problems at the plant.'"[75]

70.    Brecklin said the reason for the clog is simple: the wipes that are labeled flushable are not flushable.  "'They're not flushable in a gravity system; they're not flushable in a septic system; and they are especially not flushable in ejection pumps or grinder pump systems,'" explained Brecklin to Peoria, Illinois' *Journal Star*.[76]

### Michigan

71.    Some cities, like Grand Rapids, Michigan, are trying to deal with the problem by educating their citizens and asking them not to dispose of Flushable Wipes in the toilet.  Grand

---

[75]    Laura Nightengale, *Sanitary wipes causing mess for Germantown Hills sewer system*, JOURNAL STAR (Jan. 30, 2014), *available at* http://www.pjstar.com/article/20140130/NEWS/140139881/10924/NEWS.

[76]    *Id*.

Rapids officials have sent out a mass mailing to homeowners reminding them "'no wipes in the pipes.'"[77]  One public education mailer sent out to Grand Rapids homeowners states, "[c]onvenience wipes such as baby, hygienic, cleaning and disinfectant, as well as toilet bowl scrubbers and even paper towels might be labeled as 'disposable or flushable' but these items should not go down the drain.  Products like these do not break down in the sewer system.  They can cause plugs in sewer pipes and pumps and result in sewage backups, costly cleanups and environmental consequences that can cause rate increases."[78]

### California

72.  In California, the blockages caused by Flushable Wipes are becoming increasingly costly for its sewer districts.  Nicholas Arhontes, of the Orange County Sanitation District recently stated in an interview with CBS News, "[w]hen we see things on package labeling like 'breaks down after flushing,' we are really concerned about that because we see in our tests that they do not break down."[79]

73.  The Orange County Sanitation District – the third largest wastewater treatment agency in California – had 971 "de-ragging" maintenance calls on ten pump stations in 2010 to 2011

---

[77]  Marohn, *supra* note 50.

[78]  *Environment Tip #3, Disposable, Not Flushable*, CITY OF GRAND RAPIDS, http://grcity.us/enterprise-services/Environment-Services/Pages/Environmental-Tip-3.aspx   (last visited June 30, 2017).

[79]  *Flushable wipes not so flushable?*, CBS NEWS.COM, (Sept. 24, 2013), http://www.cbsnews.com/videos/flushable-wipes-not-so-flushable/.

costing the Orange County Sanitation District $320,000 in labor costs.[80]  Over a more recent five year period, the Orange County Sanitation District spent $2.4 million to unclog pumps.[81]

74.    Moreover, Tyrone Jue, Director of Communications for the San Francisco Public Utilities Commission, has stated that the City of San Francisco has spent over $4 million a year to clean out "fatbergs," which have been described as "a congealed mass of flushable wipes combined with cooking oil and gunk."[82]

### Washington

75.    In Vancouver, Washington, officials estimate they have spent over $1 million replacing three large sewer pumps and eight smaller sewer pumps that were constantly becoming clogged.[83]

76.    Frustrated with problems caused by Flushable Wipes, Vancouver sewer officials conducted their own experiment which involved "placing selected wipes in buckets of dye water (tie-dye works best), letting the wipes soak overnight, mixing the contents vigorously and then placing them in a sewer line manhole adjacent to a major interceptor, about a mile from Vancouver's

---

[80]    *See* Nick J. Arhontes PE, *Wastewater utilities take aim at wet wipes*, PUBLIC WORKS (Oct. 15, 2012), *available at* http://www.pwmag.com/wastewater/strangled-by-disposables.aspx.

[81]    Sharon Verbeten, *Toilets Are Not Trashcans, Says NACWA*, MUNICIPAL SEWER & WATER (Feb. 1, 2016), http://www.mswmag.com/online_exclusives/2016/02/toilets_are_not_trashcans_says_nacwa; *see also* Cynthia A. Finley, Ph.D., *Toilets Are Not Trashcans!!,* NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES (Aug. 2, 2016), http://74.91.206.132/2016%20CFinley%20Wipes.pdf.

[82]    truTV, *supra* note 4.

[83]    Carolyn, Thompson, *What a bummer! 'Flushable' wipes blamed for sewer woes*, THE ASSOCIATED PRESS (Sep. 24, 2013), http://www.today.com/money/what-bummer-flushable-wipes-blamed-sewer-woes-4B11235939.

Westside treatment plant."[84]  The result was that Flushable Wipes had "little rips and tears but still they were intact" said Frank Dick, engineering supervisor for sewer and wastewater services in Vancouver.  Dick stated: "'I haven't found any single product that's (labeled) flushable that's acceptable.'"[85]

77.    Vancouver conducted similar testing in 2016 and, as discussed above, concluded that "*flushable wipes currently on the market in the U.S., with one possible exception, cannot be considered safe to flush since they travel through real sewers intact, with no dispersion*."[86]

78.    Below is a fair and accurate representation of a clog that was removed from sewers in the City of Vancouver:



79.    The photo above demonstrates the fungibility of Flushable Wipes.

---

[84]   *In the Dyeing World of Wipes – Vancouver Puts Their Hands On Them*, NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES, (Sept. 4, 2013), http://blog.nacwa.org/in-the-dyeing-world-of-wipes-vancouver-puts-their-hands-on-them/.

[85]   Eric Apalategui, *Toilet trouble for Portland? Disposable wipes clog region's sewer pipes*, THE OREGONIAN/OREGONLIVE (Mar. 13, 2014), http://www.oregonlive.com/portland/index.ssf/2014/03/flushable_wipes_wreck_havoc_on.html.

[86]   Finley, *supra* note 44.

### Maryland

80.     In Rockville, Maryland, local news station ABC7 reported that the Washington Suburban Sanitary Commission ("WSSC") crews, which oversee 5,400 miles of Montgomery and Prince George's Counties sewer lines, blamed a clump of disposable wipes for a sewer line blockage that caused 15,810 gallons of raw sewage to spill out of a manhole and into a small creek on March 1, 2014.[87] Lyn Riggins, a WSSC spokeswoman stated that Flushable Wipes are a "'huge problem'" and, while holding up a wipe stated, "'[t]his is not flush-able. . . .  This is probably a good couple of miles that it's traveled and this wipe is still fully intact.'"[88]

81.     Stressing how pervasive this problem is, ABC7 News reported that a WSSC pumping station fills, on average, an oversized dumpster with two tons of sanitary wipes twice a week.[89]  The cost of ensuring blockages do not occur, according to the reports, ultimately falls on the taxpayer. WSSC alone has spent an estimated $1.4 million installing grinders – described as industrial-sized garbage disposals – at 17 of its 49 pumping stations.[90]  Riggins stated: "'It's expensive for us to install this equipment, and ultimately our ratepayers have to pay for it.'"[91]

82.     Flushable Wipes are also causing major issues in Ocean City, Maryland.  Jim Parsons, Chief Deputy Director of Ocean City's Public Work Department says that although Flushable Wipes may appear to flush just like toilet paper, "'when it gets in there, it doesn't act like

---

[87]     Kevin Lewis, *Wipes wreak havoc on Montgomery Co. sewer lines*, ABC7 WJLA (July 10, 2015), *available at* http://www.wjla.com/articles/2014/03/wipes-wreak-havoc-on-montgomery-co-sewer-lines-100999.html.

[88]     *Id*.

[89]     *Id*.

[90]     *Id*.

[91]     *Id*.

it.'"[92] Mr. Parsons said "'the problem has worsened in recent years[, w]hich is why, a couple years ago, the town had to purchase a basket-system to remove the loads of wipes.'"[93]  Pete Jones of Ocean City said that he has to "constantly rake out baskets full of flushed wipes to keep the pumping stations flowing."[94] Mr. Jones explained, "'[t]hat's a full 5-gallon bucket worth, and I get that on the average twice a week to three times a week . . . [i]t keeps building up and building up . . . It clogs the pumps, it clogs the pipeline but it just doesn't break down. [i]t clogs everything up.'"[95]

**Hawaii**

83.    In Honolulu, Hawaii, Jesse Broder Van Dyke, a spokesperson for Honolulu Mayor Kirk Caldwell, described the problems with Flushable Wipes, saying: "'[t]he wipes clog sewer lines, pump stations and treatments plants.'"[96]  Markus Owens, a Honolulu Department of Environmental Services spokesperson, added, "'[t]hese wipes also contribute to recurring problems at our pumping stations; they do not break down, and create additional work for our crews who have to repeatedly remove them on a monthly or weekly basis.'"[97]

---

[92]   *Delmarvanow.com: Too Many Wipes in Ocean City Pipes*, RURAL COMMUNITY ASSISTANCE PARTNERSHIP (Aug. 8, 2013) http://rcap.org/delmarvanow-com-too-many-wipes-in-ocean-city-pipes/.

[93]   *'Flushable' Wipes Clog Ocean City Pipes, Cause Headache*, WBOC 16 (Aug. 13, 2013), available at http://www.wboc.com/story/22952048/flushable-wipes-cause-problems-for-sewer-system.

[94]   *Id*.

[95]   *Id*.

[96]   Manjari Fergusson, *New Age Toilet Paper Clogging Hanolulu's Sewer Pipes, Causing Headaches*, HONOLULU CIVIL BEAT (Oct. 1, 2013),
http://www.civilbeat.com/articles/2013/10/11/20030-new-age-toilet-paper-clogging-honolulus-sewer-pipes-causing-headaches/.

[97]   *Id.*

**Canada**

84.     Flushable Wipes have also been causing a big problem for water districts and homeowners in Canada, which, like the United States, does not have federal regulations or third party verification standards.

85.     Barr Orr, a wastewater official with Municipal Enforcement Sewer Use Group ("MESUG"), an organization that represents Canada's wastewater systems, said "'[i]f we don't deal with this problem, the Canadian taxpayer will be literally flushing away millions.'"[98]

86.     MESUG members have set up multiple traps in Ontario sewer districts that have caught hundreds of Flushable Wipes.[99]  It is estimated that clogs caused by wipes cost Canadian taxpayers $250 million a year – with many officials believing that number is an under estimate and that future problems caused by Flushable Wipes will only become more expensive for taxpayers.[100]

87.     Canadian officials are not fooled by manufacturers "flushability" tests that purport to prove Flushable Wipes will not harm plumbing and sewers.

88.     Lisa Bloomfield, an engineer with the Regional District of Okanagan-Similkameen in Canada explained that real-life conditions are very different than conditions in laboratory tests, which Flushable Wipes manufacturers claim prove that their flushable products will not cause clogs. Bloomfield stated, "[y]es, if you leave them long enough they probably will break down . . . but

---

[98]     *'Flushable' wipes clogging Canadian sewers, waste-water officials say*, THE CANADIAN PRESS (Nov. 18, 2013), http://www.cbc.ca/news/canada/flushable-wipes-clogging-canadian-sewers-waste-water-officials-say-1.2430071.

[99]     Lee-Anne Goodman, *This is what 'flushable' wipes do to the sewers*, THE CANADIAN PRESS (Nov. 18, 2013), http://o.canada.com/news/this-is-what-flushable-wipes-do-to-the-sewers/.

[100]     *Id*.

there just isn't enough time from when it leaves somebody's house to when it gets to the lift stations in the sewer system."[101]

89.     Below is a photograph of Barry Orr of the City of London Environmental and Engineering Services with a "giant mass of material, primarily wipes that are supposed to be flushable, that had been clogging the sewage system pumps in London, ON":[102]



90.     Water districts and consumers share in their frustration that wipe products labeled and advertised as flushable continue to be sold.  NACWA has been receiving complaints that Flushable Wipes were causing clogging and backups in sewer systems since 2009.[103]  These complaints "roughly coincides with the ramped-up marketing of the 'flushable cleansing cloths' as a cleaner, fresher option than dry toilet paper alone."[104]  In addition, *New York Magazine*,[105] *USA Today*,[106]

---

[101]   Joe Fries, *Official raising stink about sewer clogs in South Okanagan*, PENTICION WESTERN NEWS (Oct. 3, 2013), http://www.pentictonwesternnews.com/news/226383631.html.

[102]   Goodman, *supra* note 99.

[103]   Marohn, *supra* note 50.

[104]   *'Flushable' wipes blamed for sewer clogs*, NYPOST.COM (Sept. 23, 2013, 10:41 am), http://nypost.com/2013/09/23/flushable-bathroom-wipes-blamed-for-massive-sewer-clogs/.

[105]   Bonanos, *supra* note 1.

[106]   Marohn, *supra* note 50.

*The New York Times*,[107] *The Atlantic*[108] and numerous local and Canadian news outlets have all reported on plumbing and sewer problems caused by Flushable Wipes.[109]

**Defendants Misrepresent Their Wipes as "Flushable" in Marketing Materials and on Packaging**

### Defendant Costco

91.    Kirkland Signature Moist Flushable Wipes are marketed and sold by Defendant Costco.  The packaging depicts, in large letters, "moist flushable wipes," and at times has included the statement "***break down after flushing***."[110]  Costco also states on packing that its Flushable Wipes are "safe for sewer and septic systems."

92.    A true and correct representation of the front panel of the package for Kirkland Signature Moist Flushable Wipes during the class period appears below:



---

[107]  Flegenheimer, *supra* note 6.

[108]  Kessler, *supra* note 7.

[109]  *E.g.*, *Halifax raises a stink about 'flushable' wipes clogging sewers, costing millions*, CTV News (Dec. 26, 2016), http://www.ctvnews.ca/canada/halifax-raises-a-stink-about-flushable-wipes-clogging-sewers-costing-millions-1.3217787.

[110]  https://www.unloathe.com/paper/wipes/kirkland/kirkland-signature-moist-flushable-wipes-600-pre-moistened-/ (last visited Oct. 11, 2017).

**Defendant CVS**

93.     Defendant CVS Total Home "Flushable Moist Wipes" claim to "***break[] apart when flushed***," are "Hydraspun dispersible" and are "[s]afe for sewer and septic systems."[111]  A true and correct representation of the front panel of the package for CVS Total Home Flushable Moist Wipes appears below:



94.     CVS "Flushable Cleansing Wipes" and CVS Ultra Soft "Flushable Cleansing Wipes" claim that they are "[s]afe for well-maintained sewer and septic systems," and are "[m]ade with Advanced Flushable Technology R from 100% plant-based materials."[112]  True and correct representations of the front panel of the packages for CVS Flushable Cleansing Wipes and CVS Ultra Soft Flushable Cleansing Wipes appears below:

---

[111]  http://www.cvs.com/shop/household-grocery/paper-plastic-products/bath-tissue/total-home-by-cvs-flushable-moist-wipes-tub-prodid-420029 (last visited Oct. 11, 2017).

[112]  http://www.cvs.com/shop/household-grocery/paper-plastic-products/bath-tissue/cvs-flushable-cleansing-wipes-prodid-843837 (last visited Oct. 11, 2017); http://www.cvs.com/shop/household-grocery/paper-plastic-products/bath-tissue/cvs-flushable-ultra-soft-cleansing-wipes-prodid-942022 (Oct. 11, 2017).





**Defendant Kimberly-Clark**

95.    Defendant Kimberly-Clark described its Cottonelle Fresh Care Flushable Wipes &

Cleansing Cloths on its website as using "a patented dispersible technology, which means that when

used as directed they break up after flushing and clear properly maintained toilets, drainlines, sewers,

pumps, and septic and municipal treatment systems."[113]  Kimberly-Clark also noted, in the product

---

[113]   https://web.archive.org/web/20140117033039/https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes (last visited Oct. 11, 2017).

details section, that the wipes are "[f]lushable," "[b]reak up after flushing" and are "[s]ewer- and

septic-safe."[114]

96.    On the packaging of Cottonelle Fresh Care Flushable Cleansing Cloths, along with

similar Cottonelle flushable wipes products (*e.g.*, Cottonelle Gentle Care with Aloe & E Flushable

Moist Wipes) the word "flushable" is clearly displayed, along with a circular logo containing a

symbol and the words "breaks up after flushing."

97.    A true and correct representation of the front panel of the package for Cottonelle

branded Flushable Wipes during the class period appears below:



98.    Currently, Kimberly-Clark's website touts that its Cottonelle Flushable Cleansing

Cloths use "patented SafeFlush Technology™ [and] ***start[] to break down immediately after***

***flushing***."[115] It also claims that they are "***100% Flushable***" and continues to advise consumers that

the wipes are "[s]ewer- and septic-safe."[116]

99.    Other Flushable Wipes brands manufactured by Defendant Kimberly-Clark make

similar flushability claims. In addition to Cottonelle, Scott Naturals and Pull-Ups each makes claims

---

[114]  *Id.*

[115]  https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes (last visited Oct. 11, 2017).

[116]  *Id.*

that the wipes are "flushable." The packaging for Scott Naturals Flushable Wipes, for example, has stated in a circular logo that the wipes "break[] up after flushing," as depicted below:[117]



Scott Naturals packaging also carried with it language during the class period that the purportedly flushable wipes are "safe for sewer and septic because they ***break up like toilet paper after flushing***."

100.    The official website for Huggies Pull-Ups Big Kid Flushable Wipes states that the flushable wipes are "sewer and septic safe and ***break up after flushing***."[118] The product description explicitly states that the Flushable Wipes "[b]reak[] up after flushing," and "clean[ ] better than dry toilet paper alone."[119] A true and correct representation of the front panel of the package for Huggies Pull-Ups Big Kid Flushable Wipes during the class period is depicted below:

---

[117]  http://www.gogetdelivery.com/shop-by-aisle/health-beauty/soap-bath-additiv/towelettes/flushable-wipes-refill-breaks-up-after-flushing-6-x-5-25-in.html (last visited Oct. 11, 2017).

[118]  https://www.pull-ups.com/products/flushable-wipes (last visited Oct. 11, 2017).

[119]  https://www.amazon.com/Pull-ups-Big-Flushable-Wipes-Count/dp/B00CKV3H7A (last visited Oct. 11, 2017).



101.    According to Kimberly-Clark, its Flushable Wipes may be safely flushed because the manufacturer uses "patented dispersible technology that allows [the flushable wipes] to ***break-up after flushing and clear*** properly maintained toilets, drain-lines, sewers, ***pumps***, septic tanks ***and municipal treatment systems***."[120]

### Defendant Procter & Gamble

102.    Charmin Freshmates, manufactured by Defendant Procter & Gamble, are marketed as "flushable wet wipes that give you a cleaner clean than dry toilet paper alone,"[121] while Pampers Kandoo Flushable Toilet Wipes, also manufactured by Defendant Procter & Gamble, are marketed as sewer and septic safe, and even as "biodegradable."[122]   A true and correct representation of the front panel of the package for Pampers Kandoo Flushable Wipes and Charmin Freshmates during the class period appear below:

---

[120] *Flush? Or Don't Flush?*, KIMBERLY-CLARK CORPORATION, http://www.kimberly-clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last visited Oct. 11, 2017).

[121] http://www.charmin.com/freshmates-flushable-wipes.aspx?utm_source=msn&utm_medium=cpc&utm_campaign=Charmin_Search_Desktop_Category+Interest.RF&utm_term=flushable%20wipes&utm_content=8N9FB9pv_flushable%20wipes_e_2095917578 (last visited Oct. 11, 2017).

[122] https://nehemiahbrands.com/product/kandoo-flushable-wipes-sensitive-200ct-refill/ (last visited Oct. 11, 2017).





**Defendant Target**

103.    Defendant Target claims that its up&up Toddler and Family Flushable Wipes are flushable and safe for "sewer and septic systems."[123] Specifically, Target states that "[t]hey're made with Advanced Flushable Technology® and 100% plant-based materials that are free of chemical binders," ensures that "[y]ou can feel confident flushing one wipe at a time" and purports that its flushable wipes "clean [] better than dry toilet paper alone."[124] A true and correct representation of the front panel of the package for up&up Toddler and Family Wipes during the class period appears below:

---

[123] http://www.target.com/p/up-wipes-432ct-toddler/-/A-13991458#prodSlot=medium_1_3 (last visited Oct. 11, 2017).

[124] *Id.*



**Defendant Wal-Mart**

104.    Defendant Wal-Mart purports that its Great Value Flushable Wipes "[b]reak[] apart when flushed" and are "safe for sewer and septic systems," and are "[b]etter than bathroom tissue alone."[125]  Wal-Mart also claims that its Equate Flushable Wipes "***break apart after flushing like toilet paper, reducing the chance for blockages at home [a]nd in waste management systems***."[126] True and correct representations of the front panels of the packages for Great Value Flushable Wipes and Equate Flushable Wipes during the class period appear below:

---

[125]  http://www.walmart.com/ip/Great-Value-Flushable-Wipes-Refill-100-sheets/23680392   (last visited Oct. 11, 2017).

[126]  https://www.walmart.com/ip/Equate-Flushable-All-Purpose-Wipes-126-Ct/14710106#about-item (last visited Oct. 11, 2017); *see also* https://www.walmart.com/ip/Flushable-Wipes-3-pack-48ct-ea-Compare-to-Cottonelle-Fresh-Flushable-Wipes-7-0-x-5-25-Ship-from-America/321248079#about-item (last visited June 28, 2017) (stating the Equate Flushable Wipes "[b]reak[] apart after flushing" and are "95% biodegradable").



**Defendant Walgreens**

105.    Defendant Walgreens' Flushable Cleansing Cloths claim to be flushable and "[s]afe for sewer and septic systems."[127]  A true and correct representation of the front panel of the package for Walgreens Flushable Cleansing Cloths during the class period appears below:



---

[127]  http://www.walgreens.com/store/c/walgreens-flushable-cleansing-cloths/ID=prod6015923-product (last visited Oct. 11, 2017).

**Some Flushable Wipes Appear to Break Down Quickly Enough to Be Considered Flushable**

106.    There appears to be a technology that allows for a moist wipe or cloth to utilize a substrate to sufficiently break down to be considered flushable.  One company – Haso USA Inc. ("Haso") – appears to have developed a technology that may allow a flushable wipe to be considered flushable under the various definitions of flushability discussed above.  Haso claims its flushable wipes "dissolve[] 10x faster than the next best flushable wipe" and that they are "completely biodegradable."[128]

107.    There is evidence suggesting that the substrate used for Haso's flushable wipes, which are not currently available for sale in the United States[129], may in fact break down as quickly as, or more quickly that dry toilet paper.

108.    In open and public testimony, Mr. Villée of PARSA stated that, based on first-hand testing, Haso flushable wipes "perform[] very well" and "actually may outperform dry toilet tissue."[130]  Mr. Villée agreed, based on the same testing, that Haso flushable wipes lose strength like toilet paper.

109.    Dr. Daniel Zitomer, a professor and environmental engineer with experience working with municipal wastewater and sanitary districts, testified that testing of Haso flushable wipes that he witnessed demonstrated "dramatic" dispersal.[131]  Specifically, Dr. Zitomer testified that the Haso flushable wipes he witnessed being tested "dispersed very rapidly and I would be comfortable saying

---

[128]  http://hasousa.com/portfolio-item/slider-two-third-2-6 (last visited Nov. 30, 2017).

[129]  Transcript at 40, *Kurtz v. Kimberly-Clark Corp., et al.,* No. 1:14-cv-01142 (JBW)(RML) (E.D.N.Y. July 21, 2015), ECF No. 301.

[130]  *Id*.

[131]  Transcript at 58, *Kurtz v. Kimberly-Clark Corp., et al.,* No. 1:14-cv-01142 (JBW)(RML) (E.D.N.Y. July 21, 2015), ECF No. 299.

that that was flushable because it behaved similarly or degraded more rapidly than toilet paper.  And that was a moist flushable wipe."[132]

110.    Haso's version of flushable wipes appears to demonstrate that the technology to produce a truly flushable wipe exists.

111.    Defendants either deliberately chose not to pursue, adopt or utilize such revolutionary technology, or have been unwilling or unable to launch similar technology themselves.

**The Federal Trade Commission's ("FTC") Investigations into Flushability Claims**

112.    Based upon publicly available information, the FTC opened investigations and/or inquiries into retailers' and manufacturers' advertising claims associated with so-called flushable products in or about early 2014.[133]

113.    Upon information and belief, the only investigation or inquiry by the FTC that has been closed with formal resolution pertains to the product manufactured by Nice-Pak and sold by Costco between 2011 and 2014.

114.    On May 18, 2015 the FTC served a complaint on Nice-Pak.

115.    The May 18, 2015 complaint alleged that Nice-Pak, the Flushable Wipes manufacturer, violated the FTC Act by misrepresenting that the iteration of its wipes identified as a "moist toilet tissue [] composed of non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder," which were sold from 2011 to 2014,

---

[132] *Id.*

[133] *See, e.g.*, Letter Regarding Similar Flushable Wipes Cases at 2, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (JBW)(RML) (E.D.N.Y. Nov. 14, 2016), ECF No. 256; *see also*, Letter Notifying Court the FTC Concluded Its Investigation of the Kimberly-Clark Corporation, Kurtz v. Kimberly-Clark Corp., et al., No. 1:14-cv-01142 (JBW)(RML)(E.D.N.Y. July 15, 2016), ECF No. 228 (discussing closing of investigation).

were: 1) safe for sewer systems; 2) safe for septic systems; 3) break apart shortly after being flushed; and 4) safe to flush.[134]

116.   Nice-Pak, during that time period, and, by information and belief, until today, manufactured flushable products for retailers, including Costco (under its Kirkland brand), CVS (under the CVS/pharmacy brand) and Target (under the up&up brand).

117.   Those retailers marketed – and, upon information and belief, continue to market – their respective products and utilize the same four, or similar, representations regarding the ability of the so-called flushable products to break down. *Id*.

118.   According to the FTC, whatever tests were used and performed by Nice-Pak, or its retailers, or anyone on their behalf, to substantiate those representations, did not reflect real world household plumbing or septic conditions.  *Id*.

119.   Based upon publicly available information, the FTC complaint was based solely on a prior – no longer marketed or sold iteration – of Nice-Pak's so-called flushable product.  The iterations differ based largely on the "substrate" (*i.e.*, the raw materials or "base sheet" associated with the flushable products) which forms the basis for the flushable products.  The substrate of the first iteration was manufactured by Buckeye and the second by Sigma.[135]

120.   The first, Buckeye iteration, was manufactured from 2011 through at least 2013, and was discontinued in early 2014.  Nice-Pak modified the formula of its flushable products in early

---

[134]  *See* Complaint at 1-2, *In the Matter of Nice-Pak Products, Inc.,* No. C-4556, (F.T.C., Oct. 30, 2015), *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakcmpt.pdf; *see also* Press Release, *Wet Wipe Manufacturer Agrees To Substantiate "Flushability" Advertising Claims under Settlement with FTC*, (May 18, 2015), *available at* https://www.ftc.gov/news-events/press-releases/2015/05/wet-wipe-manufacturer-agrees-substantiate-flushability.  The FTC "issues an administrative complaint when it has 'reason to believe' that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest."  *Id*.

[135]  Memorandum & Order Certifying Class Actions, *Kurtz v. Kimberly-Clark Corp., et al*., No. 1:14-cv-01142 (JBW)(RML) (E.D.N.Y. March 27, 2017), ECF No. 297.

2014 in an attempt to improve their performance given its knowledge that the pre-2014 product did not break down. This second, Sigma iteration, was first manufactured in early 2014, was available on store shelves in February and March 2014, and remains on the market today.

121. On October, 30, 2015, the FTC issued the final Consent Order with Nice-Pak.

122. The Consent Order contained a definition of "flushable" and guidelines for substantiating representations about the wipes' dispersability.

123. According to the Consent Order when marketing, labeling and/or making any "flushable" or related representations, Nice-Pak must possess and rely upon:

> [C]ompetent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true.[136]

124. Under the Consent Order, any tests, analyses, research, studies, or other evidence purporting to substantiate any of the above representations must at least:

> A.    demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment; and
>
> B.    substantially replicate the physical conditions of the environment in which the Covered Product is claimed, directly or indirectly, expressly or by implication, to be properly disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of.[137]

125. The Consent Order also required Nice-Pak to notify all of its customers, wholesalers and retailers that manufactured or advertised its Flushable Wipes products to "immediately stop

---

[136]    Consent Order at 2.

[137]    *Id*. at 3.

using all packaging, advertising, and marketing materials previously provided to [them] by Nice-Pak about these wipes."[138]

126.    The Consent Order did not delineate testing protocols that must be followed.

127.    The Consent Order did not mandate any enforcement mechanisms for products that fail testing (*e.g.*, re-labeling or removal from retail shelves).

128.    The Consent Order concluded that Nice-Pak's Buckeye product should not have been labeled as "flushable."

129.    The Consent Order concluded that Nice-Pak's Buckeye product should not have been labeled as "safe for sewer or septic systems."

130.    The Consent Order concluded that Nice-Pak's Buckeye product should not have been labeled with the representation that it "breaks apart shortly after flushing."

131.    The Consent Order did not make any findings regarding products Defendants other than Costco's Kirkland Signature Moist Flushable Wipes, CVS's Flushable Cleansing Wipes and Target's up&up Flushable Moist Wipes subject to the FTC's complaint.

**Plaintiff's Experience with Flushable Wipes**

132.    Plaintiff is, and was at all relevant times, a homeowners association in Eastern Long Island.

133.    Plaintiff owns and/or operates a sewage treatment plant on-site at The Preserve. There are 40 units in The Preserve that are connected to Connetquot's sewage treatment plant *via* piping and/or sewer lines.

134.    As of March 2017, residents of The Preserve paid $410 per month for common charges, which includes funding the sewage treatment plant.  All of the funds required to operate

---

[138]  *Id*. at 7 (Attachment A).

Plaintiff's sewage treatment plant come from residents monthly homeowners association payments to Plaintiff.  Part of the monthly payments are earmarked for a reserve account to pay for unexpected expenses, including over-budget maintenance expenses associated with the sewage treatment plant, if necessary.

135.    Plaintiff contracts with a sewage treatment plant operator to maintain its sewage treatment plant.  Currently, Plaintiff contracts with Good Effluent Management, Inc. to maintain and operate Plaintiff's sewage treatment plant.  Plaintiff's previous sewage treatment plant operator was Donald Roberts II, Ltd.

136.    In approximately 2012, Plaintiff incurred expenses in connection with major repairs to its sewage treatment plant due to the influx of Flushable Wipes.[139]  Plaintiff is likely to suffer future injury due to Defendants' conduct described herein.

137.    Plaintiff has an ongoing directive *via* the issuance of a letter to residents of The Preserve to refrain from flushing purportedly Flushable Wipes down their toilets.

138.    Plaintiff (has experienced and) anticipates experiencing future clogging and increased cost associated with operating its sewer treatment plant and removing clogs caused by the buildup of Flushable Wipes resulting from consumers and residents flushing Flushable Wipes down their toilets, which ultimately reach Plaintiff's sewage treatment plant.

139.    Plaintiff (has incurred and) anticipates incurring expenses in connection with repairs, maintenance and/or other damage to its sewage treatment plant, and faces the continued threat of further repairs, maintenance and/or other damage caused by Defendants' manufacturing, marketing and/or sale of Flushable Wipes.

---

[139]  Plaintiff does not seek past damages, or damages they have already incurred as of the filing of this Complaint.

## CLASS ACTION ALLEGATIONS

140.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) individually and as a class action on behalf of the following proposed Classes:

*New York STP Operators Class:* All STP Operators in New York affected by Flushable Wipes between December 4, 2011 and the present.

*Nationwide STP Operators Class:* All STP Operators in the United States affected by Flushable Wipes between December 4, 2011 and the present.

141.    Upon completion of discovery with respect to the scope of the Classes, Plaintiff reserves the right to amend the Class definitions.  Excluded from the Classes are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded is any entity in which Defendants have a controlling interest and any of the legal representatives, heirs, or assigns of Defendants.

142.    The New York STP Operators Class and Nationwide STP Operators Class are referred to herein as the "Classes," and members of those classes are referred to herein as "Class members."

143.    Numerosity: The Classes are so numerous that joinder of all individual members is impracticable.  While the exact number and identities of members of the Classes are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff alleges that the Classes are comprised of thousands of individual members geographically disbursed throughout the United States.  The number of Class members and their geographical disbursement renders joinder of all individual members impracticable if not impossible.

144.    Commonality: There are questions of fact and law common to members of the Classes that predominate over any questions affecting solely individual members including, *inter alia*, the following:

(a)    whether Defendants misrepresent the effect of flushing Flushable Wipes on plumbing and sewers, and otherwise mislabel Flushable Wipes so as to have the consumer believe that the Flushable Wipes would not cause harm to plumbing and sewers in their area;

(b)    whether the actions and activities of Defendants violated consumer fraud provisions of New York General Business Law §349;

(c)    whether Defendants' business practices violate New York law;

(d)    whether Defendants know or should know that the labeling on their Flushable Wipes is false when issued;

(e)    whether Defendants mislead consumers into believing that their Flushable Wipes are able to be flushed without adverse effects on plumbing and sewer systems;

(f)    whether Defendants sell, distribute, manufacture or market Flushable Wipes in Suffolk County;

(g)    whether Defendants breach their warranties to consumers concerning the Flushable Wipes;

(h)    whether Plaintiffs and Class members are entitled to statutory relief; and

(i)    whether Plaintiff and Class members are entitled to injunctive relief.

145.    Typicality: Plaintiff's claims are typical of the Class members it seeks to represent. Plaintiff and all other Class members are likely to sustain future injury arising out of Defendants' common course of conduct as complained herein.  The relief at issue is such that proceeding by way of a class action is the only sensible manner in which to vindicate the injuries to be sustained by Plaintiff and Class members.

146.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other Class

- 49 -

members.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Classes, and Plaintiff has retained competent counsel experienced in litigation of this nature.

147.    Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over questions of law and fact affecting individual Class members.  Indeed, the predominant issue in this action is whether Defendants mislabel and falsely advertise their Flushable Wipes and whether that mislabeling and false advertising (caused and) causes injury to Plaintiff and Class members.  In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

148.    In addition, the Classes may also be certified under Rule 23(b)(2) because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to Class members as a whole.

149.    The undersigned counsel for Plaintiff and the Classes request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g).  Undersigned counsel will fairly and adequately represent the interests of the Classes; have identified or investigated the Classes' potential claims; are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action; know the applicable law; will commit sufficient resources to represent the Classes; and are best able to represent the Classes.

## COUNT I

## Strict Products Liability – Defective Design

150.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

151.    Each defendant designs, manufactures, formulates, packages, distributes, promotes, markets and/or sells Flushable Wipes products designed to break up and clear toilets, drainlines, sewers, pumps and wastewater treatment systems.

152.    Consumers use Flushable Wipes in a reasonably foreseeable manner and without substantial change in the condition of such products.

153.    Defendants know, or should know, that use of Flushable Wipes in their intended manner results in the clogging and disruption of, for example, sewer lines, pump stations, lift stations and wastewater treatment plants.

154.    Defendants' products, which are flushed down toilets and then enter Plaintiff's sewage treatment plant, are defective in design and unreasonably dangerous, and/or are not designed to break down, and therefore are mislabeled as such, because, among other things: (a) Defendants manufacture, market and/or sell wet wipes as flushable that are not reasonably safe in design in that they result in the direct or indirect harm to Plaintiff and Class members' sewer lines, pump stations,

- 51 -

lift stations and wastewater treatment plants; (b) Defendants could have designed their Flushable Wipes to breakdown faster and more effectively; and (c) Defendants' design of their Flushable Wipes products is a significant or primary cause of clogging and disruption of sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members. Once Flushable Wipes flow through a sewer system they comingle and become fungible.

155.    At all times relevant to this action, including presently:

(a)    Defendants were aware of the typical waste and disposal practices resulting from the intended use of their products;

(b)    Defendants were aware of the extended time needed for Flushable Wipes to break down. Despite such knowledge, Defendants intended their Flushable Wipes to be used in such a manner that would result in clogs and disruptions of sewer systems, pump stations, lift stations and wastewater treatment plants;

(c)    Defendants failed to design their Flushable Wipes products so that the Flushable Wipes would easily breakdown, or at a minimum should not have labeled them as "flushable," during and after the flushing process and not cause build up or clogs in pipes, sewers, plants, pumps and/or other wastewater or sewage equipment;

(d)    Defendants knew, or should have known, of appropriate Flushable Wipe redesigns, retrofits and/or modifications to protect against clogging commonly associated with flushing anything but toilet paper down the toilet, and negligently and/or consciously disregarded this knowledge and failed to redesign, modify and/or retrofit the Flushable Wipes;

(e)    Defendants represented to consumers and the general public that the waste and discharges from the Flushable Wipes products they sold would degrade into harmless substances and/or would not cause clogging or other harm to sewer lines, pump stations, lift stations and

wastewater treatment plants.  At the time these representations were made, Defendants knew, or should have known, these representations were false, misleading, and/or that there was no reasonable basis to believe that they were true; and

(f)     When Flushable Wipes were used and disposed of by consumers pursuant to Defendants' recommended application and disposal procedures set forth on product packaging, advertisements, oral statements and by other means, the Flushable Wipes caused clogging of sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members because of Defendants' failure to recommend adequate and proper safeguards to avoid or prevent such clogging.

(g)     The Flushable Wipes manufactured by Defendants are defective products, and/or are not designed to break down, and therefore are mislabeled as such, because, among other things: (1) Defendants' Flushable Wipes cause extensive damage to the plumbing of sewer lines, pump stations, lift stations and wastewater treatment plants; (2) the continued use of Defendants' Flushable Wipes poses a significant threat to private and public waste disposal systems; (3) Defendants fail to provide adequate warnings of the known and foreseeable risk of the use of Flushable Wipes; and (4) Defendants fail to conduct adequate scientific studies to evaluate the effect that flushing Flushable Wipes down a toilet had on sewer lines, pump stations, lift stations and wastewater treatment plants.

156.     The above-described defects in Defendants' Flushable Wipes product existed when the Flushable Wipes left Defendants' possession, and still exist today.

157.     Defendants' Flushable Wipes (were and) continue to be harmful to an extent beyond that which would be contemplated by the ordinary consumer, and/or the risk of harm to sewer lines,

pump stations, lift stations and wastewater treatment plants posed by Flushable Wipes (outweighed and) continue to outweigh the cost to the Defendants of reducing or eliminating such risk.

158.    As a direct and proximate result of the defects alleged herein, certain of Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants are clogged with Flushable Wipes.

159.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, Plaintiff and Class members will incur investigation, treatment, remediation and monitoring costs and expenses related to the effect of Flushable Wipes on Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants.

160.    Plaintiff is informed, believes and alleges that as a further direct and proximate result of the acts and omissions of Defendants alleged herein, Plaintiff and Class members will sustain substantially increased expenses and loss of the use of their sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, causing them significant injury and damage.  Plaintiff and Class members are also entitled to costs and prejudgment interest as permitted by law.

161.    Defendants know that it is substantially certain that their alleged acts and omissions described above cause injury and damage, including clogging and disruption of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment.  Defendants (committed and) commit each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud and/or malice.  Such conduct is reprehensible and performed with the intent to induce reliance by a class of persons including their customers, the public, consumers and Plaintiff and Class members on false representations, and to promote sales of Flushable Wipes in conscious

disregard of the known risks to sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment owned and/or operated by Plaintiff and Class members.

162.    Defendants (acted and) continue to act maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

## COUNT II

### Strict Products Liability – Failure to Warn

163.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

164.    Defendants design, manufacture, formulate, promote, market and/or distribute Flushable Wipes products.

165.    Defendants know that individuals or companies purchase and use Flushable Wipes without inspection for defects.

166.    Defendants are aware that the use of Flushable Wipes purchased or otherwise acquired (directly or indirectly) from them would result in their Flushable Wipes being flushed down toilets and subsequently flowing through sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment owned and/or operated by Plaintiff and other Class members.

167.    Defendants know that if their Flushable Wipes do not break down significant clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment occurs.

168.    Defendants' Flushable Wipes are used by consumers in a reasonably foreseeable manner and without substantial change in the condition of such products.

169.    Despite the known and/or foreseeable risk of clogging sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment associated with the use of

Flushable Wipes, Defendants fail to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

170.    Defendants fail to adequately warn or advise consumers and other users of Defendants' Flushable Wipes of such hazards.

171.    Defendants fail to adequately warn against the foreseeable misuses of their product, including improper handling or disposal of Flushable Wipes.

172.    Defendants fail to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their Flushable Wipes products.

173.    As a direct and proximate result of Defendants' failure to warn of the hazards posed by the use of their Flushable Wipes that are, or should be, known to them, certain of Plaintiff and Class members' wastewater equipment (have been and) continues to be clogged by Flushable Wipes. While flowing through sewer systems and sewage treatment plants, Flushable Wipes comingle to the extent that individual wipes become unrecognizable.

174.    As a direct and proximate result of the Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur investigation, treatment, remediation and monitoring costs and expenses related to the clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment by Flushable Wipes.

**COUNT III**

**Nuisance**

175.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

176.    The negligent, reckless and/or intentional activity of the Defendants, as alleged herein, results in the clogging of Plaintiff and Class members' sewer lines, pump stations, lift

- 56 -

stations, wastewater treatment plants and/or waste disposal equipment giving rise to special damage to Plaintiff and Class members.

177.    The negligent, reckless and/or intentional activity of the Defendants, as alleged herein, accordingly, interferes with Plaintiff and Class members' rights and property interests and their use and enjoyment of those rights and interests.

178.    Each defendant causes, maintains, assists and/or participates in such nuisance, and is a substantial contributor to such nuisance.

179.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendants cause substantial injury to Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, in which Plaintiff and Class members have a significant property interest.

180.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendants substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff and Class members' rights to use and enjoy their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment.

181.    Plaintiff and Class members are specially and adversely affected by the nuisance conditions alleged herein.

182.    Each defendant (was and) is aware that the flushing of Flushable Wipes would result in significantly clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment.

183.    Defendants, each of whom supplies, distributes, delivers and/or otherwise sells (directly or indirectly) Flushable Wipes that are used, discharged, disposed of or otherwise flushed into Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment

plants and/or waste disposal equipment, engage in affirmative conduct that causes, contributes to, maintains and/or assists in the creation of the nuisance alleged herein.

184.    The clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment alleged herein has varied and continues to vary over time.

185.    Once Flushable Wipes travel through sewer systems and sewage treatment plants they comingle, causing them to become identical from one another.

186.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are clogged by buildup of Flushable Wipes.  As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur investigation, treatment, remediation and monitoring costs and expenses related to the flushing of Flushable Wipes in an amount to be proved at trial.

## COUNT IV

### Trespass

187.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

188.    Plaintiff and Class members own, possess and actively exercise their rights to appropriate and use their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment described herein, including those that (have been and) are clogged by Flushable Wipes.

189.    Defendants negligently, recklessly and/or intentionally fail to properly control, apply, use and/or prevent the disposal of Flushable Wipes, such that they are each a substantial factor in proximately causing Flushable Wipes to enter, invade, intrude upon and injure Plaintiff and Class

members' possession of property, including sewer lines, pump stations, lift stations wastewater treatment plans and other waste disposal equipment owned and/or operated by Plaintiff and Class members.  Each Defendant aids and abets the trespasses and is jointly responsible for the injuries and damage being caused by the following affirmative conduct:

(a)       Defendants (participated and) participate in the use and disposal of Flushable Wipes by intentionally, recklessly, and/or negligently controlling the use and/or preventing the proper disposal of Flushable Wipes by consumers; intentionally, recklessly, and/or negligently instructing consumers about the purportedly proper disposal methods for Flushable Wipes, including instructing Flushable Wipes users to dispose of Flushable Wipes directly into the toilet; and intentionally, recklessly, and/or negligently calibrating, designing and manufacturing Flushable Wipes in such a manner which (caused and) cause Flushable Wipes products to be routinely flushed into toilets.  As a result of this activity, Flushable Wipes clog Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, and otherwise intrude upon and affect Plaintiff and Class members' possessory interests;

(b)       Defendants intentionally, recklessly, and/or negligently instruct consumers about the disposal of Flushable Wipes through product labels, advertisements funded, published, and distributed by Defendants and through other literature.  Defendants recommended and continue to recommend that Flushable Wipes be flushed down the toilet notwithstanding that Defendants know, or should know, that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, posing a significant risk to Plaintiff and Class members.  As a result, when Flushable Wipes were and are disposed of in toilets pursuant to the techniques recommended by Defendants, Flushable Wipes clog Plaintiff and Class members' sewer

- 59 -

lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, and otherwise intrude upon and damage Plaintiff and Class members' possessory interests;

(c)     At all relevant times Defendants: (1) knew and/or reasonably should have known, and continue to know, that Flushable Wipes cause property damage; and (2) had either not conducted adequate testing to determine the potential effects Flushable Wipes had on plumbing and sewer systems or unreasonably interpreted any such testing they had conducted.  Even though Defendants had sufficient information to determine that Flushable Wipes posed a threat to properly functioning sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, they did not modify their disposal instructions or provide the appropriate advice, instruction or information to consumers regarding proper disposal and use needed to avoid build up and clogging of said sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment; and

(d)     Defendants knew, or should have known, and continue to know, that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment.  Defendants instructed, requested and/or induced these acts (and continue to do so) and are a substantial factor in causing the resulting harm to Plaintiff and Class members' possessory interests, and further aid and abet this conduct, and are liable for the continuing injuries being sustained by Plaintiff and Class members.

190.     The clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment alleged herein has varied and continues to vary over time. The Flushable Wipes comingle while flowing through sewer systems and sewage treatment plants, the extent to which they become indistinguishable from one another.

191.    Plaintiff and Class members have not consented to, and do not consent to, the clogging alleged herein.  Defendants, and each of them, knew, reasonably should have known, and continue to know, that Plaintiff and Class members would not consent to this trespass.

192.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are clogged by Flushable Wipes.  As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur investigation, treatment, remediation and monitoring costs and expenses related to Flushable Wipes clogging its sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment in an amount to be proved at trial.

## COUNT V

### Negligence

193.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

194.    Defendants have a duty to use due care in the design, manufacturing, formulation, handling, control, disposal, sale and labeling, instructions for use and disposal of Flushable Wipes to prevent, and to the extent feasible, eliminate clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment with Flushable Wipes.

195.    Defendants so negligently, carelessly, and recklessly design, manufacture, formulate, handle, label, instruct, control, market, promote and/or sell Flushable Wipes products and/or negligently recommend disposal techniques for Flushable Wipes products that they directly and proximately cause Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment to be clogged by Flushable Wipes.

196.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are clogged by Flushable Wipes.  Flushable Wipes comingle once they enter sewer systems and sewage treatment plants, such that they cannot be distinguished from one another.

197.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur costs and expenses related to the clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment caused by Flushable Wipes, including costs and expenses associated with unclogging, investigating, treating, remediating and monitoring such clogs and otherwise maintaining sewage systems free from the buildup of Defendants' Flushable Wipes.

198.    For the reasons set forth and specifically alleged above, Defendants are acting maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

## COUNT VI

### Negligent Misrepresentation

199.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

200.    Defendants advertise, label and otherwise represent their purportedly Flushable Wipes products as safe to flush, safe for plumbing, safe for sewer systems and/or biodegradable.

201.    Defendants know or should know their Flushable Wipes products are not in fact flushable, safe for plumbing and sewer systems and/or biodegradable, and otherwise do not and do not break down or perform as advertised.

202.    Defendants know or should know that their Flushable Wipes products cause damage to sewer and wastewater systems.

203.    Defendants (misrepresented and) continue to misrepresent the effects flushing Flushable Wipes down toilets has on sewer and wastewater systems.

204.    Defendants (omitted and) omit material facts regarding the effect flushing Flushable Wipes down toilets has on sewer and wastewater systems.

205.    Defendants have a duty to exercise reasonable care when issuing statements or disclosures regarding the nature of their Flushable Wipes products.

206.    Upon information and belief, the statements or disclosures regarding ability of Flushable Wipes to be flushed without having adverse effects on sewer and wastewater systems are likely to deceive or confuse Plaintiff and Class members.

207.    Defendants' representations regarding flushability are likely to influence future decisions of consumers and the buying public.  Consumers, by purchasing Flushable Wipes, reasonably act in reliance upon the truth of the representations made by Defendants.

208.    As a direct and proximate result of Defendants misrepresentations, as described above, Plaintiff and the Class suffer clogs of their sewer lines, pump stations, lift stations, wastewater or sewage treatment plants or other facilities and waste disposal equipment, and costs associated with the unclogging, investigation, treatment, removal, maintenance and/or remediation and monitoring related to such clogs.

## COUNT VII

## Violation of Section 349 of New York General Business Law

209.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

210.     Defendants engage in false and misleading advertising concerning the effects of flushing Flushable Wipes on sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment in violation of G.B.L. §349, which makes deceptive acts and practices unlawful.

211.     As fully alleged above, by advertising, marketing, distributing and/or selling the Flushable Wipes to consumers connected to Plaintiff and Class members' sewers and sewage or wastewater treatment plants or facilities, Defendants engaged in, and continue to engage in, deceptive acts and practices.

212.     In connection with the marketing, advertising and packaging of Flushable Wipes to consumers, Defendants materially mislead said consumers and Defendants' acts and practices were and are improper.

213.     Plaintiff and the members of the Classes further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise with respect to the effects of flushing Flushable Wipes down toilets.  Plaintiff and Class members request an order granting them injunctive relief, including an order requiring Defendants to cease marketing and advertising Flushable Wipes as safe to be flushed down the toilet, "flushable," safe for sewer systems and/or biodegradable until their labeling is truthful or otherwise not deceptive.  Absent injunctive relief, Defendants will continue to market, distribute and sell Flushable Wipes to the detriment of Plaintiff and Class members.

214.     As a direct and proximate result of Defendants' violation of G.B.L. §349 as described above, Plaintiff and Class members (have been and) continue to be injured, and have suffered statutory damages.

## COUNT VIII

### Breach of Express Warranty

215.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

216.    Defendants (made representations and) continue to make representations to the public by their advertising, packaging and other means, that Flushable Wipes were and are safe to flush, safe for plumbing, safe for sewer systems and/or biodegradable.  For example, Defendants made and/or make representations that their Flushable Wipes are in fact "flushable," "sewer and septic safe,"  "biodegradable" and  "break up after flushing."  These promises become part of the basis of the bargain between consumers and Defendants and thus constitute an express warranty.

217.    Defendants sell the Flushable Wipes to consumers, who buy the Flushable Wipes from Defendants and/or other retailers selling Defendants' Flushable Wipes products.

218.    However, Defendants breach their express warranties in that the goods do not, in fact, flush without adverse consequences to, *e.g.*, sewer systems and wastewater treatment equipment within those systems as set forth in detail herein. As a result of this breach, consumers do not in fact receive goods as warranted by Defendants.

219.    Defendants' warranties extend to Plaintiff and members of the Classes as it is reasonable to expect that they would be affected by Defendants' breaches of express warranties.

220.    Defendants know that Plaintiff and members of the Classes would be affected by the manufacturing, marketing and sale of wipes labeled as flushable and safe for sewer and septic systems that are not in fact flushable or safe for sewer and septic systems.

221.    As a proximate result of these breaches of warranties by Defendants, Plaintiff and Class members (have and) will continue to suffer clogs of their sewer lines, pump stations, lift stations, wastewater or sewage treatment plants or other facilities and waste disposal equipment, and

- 65 -

costs associated with the unclogging, investigation, treatment, removal, maintenance and/or remediation and monitoring related to such clogs.

## COUNT IX

### Breach of Implied Warranty of Merchantability

222.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

223.     At the time of sale, on each purchase, Defendants were in the business of designing, manufacturing, formulating, packaging, distributing, promoting, marketing and/or selling wipes labeled as flushable.

224.     By operation of law, Defendants impliedly warrant to Plaintiff and Class members that their purportedly Flushable Wipes products are of merchantable quality and fit for the ordinary purposes for which they are used.

225.     Defendants knowingly and/or recklessly sell defective products without informing consumers about the defect.

226.     Defendants possess actual superior knowledge of the problems with their purportedly Flushable Wipes products based on, *inter alia*, testing, complaints and/or calls to customer care and complaints posted on the internet, and statements by wastewater districts, organizations and officials throughout the country.

227.     Defendants' Flushable Wipes are unfit for the ordinary purpose of flushing because they are not in fact flushable, safe for sewer and/or biodegradable as advertised.

228.     Defendants' warranties extend to Plaintiff and members of the Classes as it is reasonable to expect that they would be affected by Defendants' breaches of implied warranties.

229.    Defendants know that Plaintiff and members of the Classes would be affected by the manufacturing, marketing and sale of wipes labeled as flushable, safe for sewer systems and/or biodegradable that are not in fact flushable, safe for sewer systems or biodegradable.

230.    As a proximate result of Defendants' breaches of implied warranties, Plaintiff and Class members (have and) will continue to suffer clogs of their sewer lines, pump stations, lift stations, wastewater or sewage treatment plants or other facilities and waste disposal equipment, and costs associated with the unclogging, investigation, treatment, removal, maintenance and/or remediation and monitoring related to such clogs..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.    An order certifying the Classes under the appropriate provisions Federal Rule of Civil Procedure 23, as well as any appropriate subclasses, and appointing Plaintiff as a representative of the Classes and the undersigned counsel as Lead Counsel to represent the Classes;

B.    An order awarding statutory damages in favor of Plaintiffs and Class members against Defendants for Defendants' violations of law described herein, including interest thereon;

C.    An order declaring Defendants' practices to be improper, unfair, unlawful and/or deceptive;

D.    An order enjoining Defendants from marketing and selling their Flushable Wipes as "flushable" until their labeling is truthful or otherwise not deceptive;

E.    An order enjoining Defendants from marketing and selling their Flushable Wipes as safe for sewer systems until their labeling is truthful or otherwise not deceptive;

F.    An order enjoining Defendants from marketing and selling their Flushable Wipes as biodegradable until their labeling is truthful or otherwise not deceptive;

G.      An order enjoining Defendants from marketing and selling their Flushable Wipes as capable of breaking down during or after flushing until their labeling is truthful or otherwise not deceptive;

H.      An order for pre- and post-judgment interest to the Classes, as allowed by law;

I.      An order for reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

J.      Granting such other and further relief as is just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED:  December 4, 2017              ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                     SAMUEL H. RUDMAN
                                     MARK S. REICH
                                     VINCENT M. SERRA


                                              */s/ Mark S. Reich*
                                     MARK S. REICH

                                     58 South Service Road, Suite 200
                                     Melville, NY  11747
                                     Telephone:  631/367-7100
                                     631/367-1173 (fax)
                                     srudman@rgrdlaw.com
                                     mreich@rgrdlaw.com
                                     vserra@rgrdlaw.com

                                     *Attorneys for Plaintiff*