# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 17-CV-7050 (JFB)(AYS)
_____

THE PRESERVE AT CONNETQUOT HOMEOWNERS ASSOCIATION, INC.,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTOR & GAMBLE COMPANY, TARGET CORPORATION, WALGREENS BOOTS ALLIANCE, INC., AND WAL-MART STORES, INC.,

Defendants.

_____

**MEMORANDUM AND ORDER**
January 28, 2019
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, The Preserve at Connetquot Homeowners Association, Inc. ("The Preserve" or "plaintiff"), on behalf of itself and all other similarly situated entities that own and/or operate sewage or wastewater treatment plants or facilities, filed this action against defendants, Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), Kimberly-Clark Corporation ("Kimberly-Clark"), The Proctor & Gamble Company ("P & G"), Target Corporation ("Target"), Walgreens Boots Alliance, Inc. ("Walgreens"), and Wal-Mart Stores, Inc. ("Wal-Mart") (collectively the "defendants"), alleging that defendants' products labeled as "flushable" have caused

and will continue to cause injury under strict products liability, nuisance, trespass, negligence, and negligent misrepresentation tort theories, breach of express warranty, and breach of implied merchantability contract theories, and that the advertising of such products as "flushable" violates Sections 349 of the New York General Business Law ("NYGBL").

Presently before the Court are defendants' motions to dismiss the Complaint, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as a motion in the alternative to strike plaintiff's allegations regarding a nationwide class and stay the case. With respect to the Rule 12(b)(1)

motion, defendants argue that plaintiff lacks standing because of the failure to allege any imminent injury-in-fact. For the reasons set forth below, the Court holds that the plaintiff has failed to sufficiently plead facts to establish the injury-in-fact requirement under Article III and, thus, dismisses the Complaint for lack of standing. As a threshold matter, the Court emphasizes that plaintiff does not seek monetary damages with respect to any past harm; rather, plaintiff only seeks prospective relief, primarily in the form of an injunction that would enjoin defendants from marketing and selling their flushable wipes as flushable, safe for sewer systems, and/or biodegradable. In an attempt to establish constitutional standing (including the "injury-in-fact" requirement), plaintiff (1) relies on the allegation that, in 2012, it incurred expenses in connection with major repairs to its sewage treatment plant due to the influx of flushable wipes (similar to numerous other municipalities), and (2) asserts, based upon that experience and the ongoing use of these wipes by consumers in Suffolk County, that the wipes "can, **at any given moment**, cause harm in the form of clogs." (Pl. Br. at 19) (emphasis in original).

The Court concludes that these allegations, without more, are insufficient to satisfy constitutional standing requirements for the relief sought in this case. The allegations do not establish that the threatened harm of clogging is certainly impending, or that there is a substantial risk that the harm will occur. Moreover, although it is well settled that a plaintiff can establish standing for injunctive relief based upon past harm if the plaintiff can demonstrate that it is likely to be harmed again in the future in a similar way, plaintiff's speculative allegations in the current Complaint fail to cross that constitutional threshold. Plaintiff refers to a clog that occurred over six years ago without any concrete allegations to

support the assertion that it is likely to re-occur in the future. For example, there is no allegation that plaintiff has done a single test of its sewer treatment system since 2012 to determine whether there is any level of clogging six years later, nor have they alleged that there is a single indicia of any clogging over this extended period of time. In fact, there are allegations in the Complaint that could support the inference that there are changed circumstances since the clog in 2012 that might prevent this alleged harm from recurring in the future. For example, after the clog in 2012, The Preserve installed new equipment, including pumps and a filtering system, to remedy the situation. Moreover, plaintiff issued a directive to the residents of The Preserve to refrain from flushing the flushable wipes down their toilets. The impact of this directive may be magnified by the fact that the funds required to operate the sewage treatment plant, including the repairs required due to alleged flushable wipes, are incurred by the owners of the forty units in the Preserve. Even though there are only forty units in The Preserve that utilize the sewage treatment plant at issue, plaintiff has not alleged that it has made any effort to ascertain whether the directive and cost to the residents in connection with the sewage treatment plant has persuaded some, most, or all of the residents of the forty units to cease using flushable wipes. In other words, it may very well be that the new equipment, the directive, and/or the residents' financial incentive to avoid using any products that might clog the sewage treatment plant have in whole, or in part, alleviated any likelihood that this harm will ever recur. Thus, these variables, combined with the passage of six years since the previous clog, render plaintiff's claim of future harm completely speculative at this point in time, absent some additional allegations to support a reasonable inference that there is a substantial risk, or any likelihood, that a clog will occur again.

To hold otherwise would be to allow standing to be based on nothing more than an assertion that, because the harm happened once, there is no reason to believe it will not happen again. Under plaintiff's logic, standing would exist even if this lawsuit were brought ten or fifteen years from now because the clog could hypothetically happen "at any given moment" because it happened once before. Such a speculative inference is woefully insufficient to satisfy the Article III standing requirement which, among other things, ensures that courts are not prematurely deciding disputes, including issuing injunctions, in situations that are unlikely to result in any future actionable harm to the plaintiff. Accordingly, the Court dismisses the Complaint without prejudice for lack of standing. However, because plaintiff may be able to supplement the complaint with additional allegations to satisfy the standing requirement, the Court will give plaintiff an opportunity to re-plead.[1]

## I. BACKGROUND

### A. The Complaint[2]

Plaintiff asserts strict products liability, nuisance, trespass, negligence, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability claims, and violation of Section 349 of NYGBL claims against defendants for the marketing, manufacturing, distribution and/or sale of "flushable wipes." (*See generally* Compl.)

The Complaint defines flushable wipes as including all "moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer systems and/or biodegradable." (*Id.* ¶ 1.) Flushable wipes are designated as "flushable" on product labeling, marketing materials, advertisements, and on sellers' websites. (*Id.* ¶ 3.) The Complaint asserts that flushable wipes are a "major reason wastewater systems clog" and the wipes "wreak havoc on pumps and machinery in sewage or wastewater treatment plants." (*Id.* ¶ 51.) According to the Complaint, clogs and other sewage system issues have been attributed to flushable wipes in major cities across the United States and Canada. (*See id.* ¶¶ 54-90.) The Complaint outlines in detail, based upon public source information (including quotes from water district officials), substantial sums of money spent in many states (such as New York, Pennsylvania, Georgia, North Carolina, Texas, Illinois, Michigan, California, and Washington) and Canada to repair clogs to sewage or wastewater treatment plants, allegedly caused by flushable wipes. (*See id.*)

Plaintiff is a homeowner association that runs a townhouse community, The Preserve at Connetquot ("The Preserve"), in Suffolk County, New York. (*Id.* ¶132.) The Preserve owns and operates a sewage treatment plant on-site. (*Id.* ¶ 133.) The Preserve has forty units that are connected to the sewage treatment plant via piping and/or sewer lines. (*Id.*) As of March 2017, residents of The Preserve paid $410 per month for common

---

[1] Because the Court has dismissed for lack of standing under Rule 12(b)(1), the Court need not address the other grounds for dismissal raised by the defendants under Rule 12(b)(6). Similarly, the Court need not address defendants' motion, in the alternative, to strike plaintiff's allegations regarding a nationwide class and seeking to stay the case.

[2] The following facts are taken from the Complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the Complaint to be true for purposes of the pending 12(b)(1) and 12(b)(6) motions to dismiss. Moreover, although the Complaint is sixty eight pages long, the Court has focused on the allegations that relate to standing, which is the dispositive issue for purposes of this Memorandum and Order.

charges, including the funding of the sewage treatment plant. (*Id.* ¶ 134.) All operating costs for the sewage treatment plant, including over-budget maintenance expenses associated with the sewage treatment plant, are covered by residents' monthly homeowners association payments to The Preserve. (*Id.*)

In approximately 2012, plaintiff "incurred expenses in connection with major repairs to its sewage treatment plant due to the influx of [f]lushable [w]ipes." (*Id.* ¶ 136.) Plaintiff now has an "ongoing directive via the issuance of a letter to residents of The Preserve to refrain from flushing purportedly [f]lushable [w]ipes down their toilets." (*Id.* ¶ 137.)

Plaintiff alleges that it anticipates future clogging and increased costs associated with operating and maintaining its sewage treatment plant and removing clogs caused by flushable wipes. (*Id.* ¶¶ 138-39.)

## A. Procedural History

Plaintiff filed its Complaint on December 4, 2017. (ECF No. 1.) On April 30, 2018, defendants filed a joint motion to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and, in the alternative, to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim and, in the further alternative, to strike plaintiff's allegations regarding a nationwide class and to stay the case. (ECF No. 52.) Defendants Costco, CVS, and Target also filed an additional motion to dismiss based upon a prior Consent Decree with the Federal Trade Commission regarding flushable wipes manufactured by Nice-Pak Products, Inc. (ECF No. 51.) On July 13, 2018, plaintiff filed its omnibus opposition to the joint motion to dismiss, as well as to defendants CVS, Costco, and Target's motion to dismiss. (ECF No. 62.) On August 13, 2018, defendants filed their replies. (ECF Nos. 64, 65.) Oral argument was held on October 29, 2018. The Court has fully considered all of the parties' submissions and arguments.

## II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When a court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of

specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662, 129 S. Ct. 1937 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and

(5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).

## III. DISCUSSION

Defendants argue that plaintiff lacks standing because it has failed to allege any imminent injury-in-fact and because any injury is not fairly traceable to each named defendant's conduct. For the reasons set forth below, the Court concludes that plaintiff lacks standing to bring this action because plaintiff has failed to allege facts that satisfy the injury-in-fact requirement and, thus, does not reach the additional question of whether the Complaint should also be dismissed for lack of standing because any hypothetical injury would not be traceable to the defendants.

### A. Article III Standing

As the Second Circuit has explained, "Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the

requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc* , 471-72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)), *cert denied sub nom Sincerely Yours, Inc. v. Cooper*, 130 S.Ct. 1688 (2010). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Id.* (citation and quotation marks omitted); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant.") (internal quotation marks omitted)).

To meet Article III's injury-in-fact requirement, plaintiff's alleged injury "must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (additional quotation marks omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect[ ] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352

F.3d at 632 (internal quotation marks and citations omitted). A plaintiff seeking to represent a class must personally have standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

The Second Circuit has noted that, "[t]he Supreme Court has described the imminence requirement for injury-in-fact differently in different contexts without specifying whether the descriptions are synonymous or distinct." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015); *see also Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) ("The Supreme Court's jurisprudence regarding how imminent a threat must be in order to support standing, however, has been less than clear."). In *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013), the Court concluded that plaintiffs did not have standing to challenge a statute expanding government surveillance capabilities because they had failed to show that injury was "certainly impending." However, the Court also noted that "our cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about. In some instances, we have found standing based on a '*substantial risk*' that the harm will occur. . . ." *Id.* at 414 n.5 (emphasis added); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.") (citations omitted).

In the context of prospective injunctive relief, the Supreme Court and the Second Circuit have concluded that a plaintiff lacks standing to pursue injunctive relief if plaintiff does not establish a "real or immediate threat" of injury, rather than allegations of future harm that are merely "speculative." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1982); *see also Nicosia v.*

*Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). When standing is premised on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that [it] will be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see also Nicosia*, 834 F.3d at 239 ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").

B.      Application

As a threshold matter, the Court notes that plaintiff is not alleging an actual, present injury and there are no allegations that plaintiff is actually aware of continued flushable wipe usage by residents of The Preserve. Instead, the theory of the case is that "…[f]lushable [w]ipes have caused harm to wastewater facilities or treatment plants and can, ***at any given moment***, cause harm in the form of clogs. The question is not whether the [f]lushable [p]roducts will cause damage to wastewater facilities or treatment plants, but when that damage will occur. The question of imminence, or when that damage may occur, is at any moment." (Pl. Br. at 19) (emphasis in original).

Plaintiff does not dispute in its papers (nor at oral argument), that the only injury The Preserve has suffered was a clog, purportedly attributable to flushable wipes, in The Preserve sewage treatment system in 2012. (*Id.* at 3; Comp. ¶ 136.) Further, though not specifically pled in the Complaint, plaintiff asserts in its papers that, "after [the 2012 clog], and to combat future clogs, shutdowns, equipment failures, and remedy past damages to [sewage treatment plant] equipment, The Preserve installed new equipment, including pumps and a filtering system." (Pl. Br. at 3.) Plaintiff further

asserts that it "has an ongoing directive via the issuance of a letter to residents of The Preserve to refrain from flushing purportedly [f]lushable [w]ipes down their toilets" (Comp. ¶ 13) and that "[i]n an additional attempt to prevent further damages to its [sewage treatment plant], The Preserve issued a pamphlet to homeowners asking [them] not to flush…so-called [f]lushable [w]ipes." (Pl. Br. at 3.) With respect to the pamphlet, plaintiff argues that, while "[t]he pamphlet was ostensibly issued to spare the HOA from damage that would inevitably occur if the [h]omeowners continued to use [f]lushable [p]ipes as advertised . . . the educational pamphlet was not (and still is not) binding on [h]omeowners . . . . The Preserve has no way of policing or holding individual homeowners responsible for using [f]lushable [w]ipes. And there is no law or regulation prohibiting [h]omeowners from flushing [f]lushable [w]ipes." (*Id.* at 3-4.)

Defendants contend that plaintiff has failed to satisfy the injury-in-fact requirement because plaintiffs have failed to establish the imminence requirement of a future injury because (1) "[h]aving gone six years without any incident allegedly attributable to [d]efendants' products, [p]laintiff does not plead a single fact to suggest why harm is suddenly imminent today"; (2) plaintiff has applied the wrong standard of imminence—applying a "likely" to suffer future injury standard rather than a "certainly impending" injury standard; (3) the passage of time since injury weakens plaintiff's claim of imminence; and (4) plaintiff's "ongoing directive" to homeowners to refrain from flushing flushable wipes further suggests there is no imminent injury to plaintiffs. (Def. Br. 6-7.) Defendants also argue that plaintiff fails to establish causation because it does not plead any facts showing that the injury is fairly traceable to each defendant.

As a threshold matter, to the extent the defendants suggest that the plaintiff must show the harm is "certainly impending" to satisfy Article III standing for injunctive relief, the Court disagrees. As noted above, in the wake of *Clapper*, the Supreme Court has made clear that "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, *or* there is a substantial risk that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (citations omitted) (emphasis added). Moreover, in its post-*Clapper* jurisprudence, the Second Circuit has reiterated that past injuries may provide a basis for establishing standing for injunctive relief if "the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239. This is consistent with well-settled precedent in the Supreme Court and the Second Circuit that a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [it]…will be injured in the future." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *Deshawn E. by Charlotte E. v Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *see also Lyons*, 461 U.S. 95, 102 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

For example, in *Shain*, the Second Circuit found that the plaintiff lacked standing to pursue injunctive relief against Nassau County because the plaintiff did not establish the likelihood of a future encounter with the police resulting in a subsequent unconstitutional strip search. 356 F.3d at 215. The Second Circuit concluded that in order for Shain to "establish a sufficient likelihood of a future unconstitutional strip search," he would have had to establish that,

[*I*]f he is arrested in Nassau County and *if* the arrest is for a misdemeanor and *if* he is not released on bail and *if* he is remanded to NCCC and *if* there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched. Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief.

*Id.* at 216. In its analysis, the Second Circuit emphasized that the circumstances that resulted in Shain's past arrest and injury, his contentious divorce proceedings, were no longer present, and that, "in the year between his arrest and his lawsuit, Shain was not rearrested, nor does he allege that he had any further encounters with the police." *Id.* at 215.

Similarly, in *Nicosia*, the Second Circuit concluded that the plaintiff lacked standing to pursue injunctive relief because the plaintiff, who claimed past injury due to his past purchases of a weight loss product containing sibutramine, did not "establish a likelihood of future or continuing harm" because he did not establish that "he is likely to be subjected to further sales by Amazon of products containing sibutramine…and [he] has failed to allege that he intends to use Amazon in the future to buy *any* products, let alone food or drug products generally or weight loss products in particular." 834 F.3d at 239.

Like the plaintiffs in *Shain* and *Nicosia* that failed to plead facts that established a likelihood of future harm, here plaintiff has failed to plead facts that establish a likelihood of future harm from clogging because of flushable wipes, pleading only that The Preserve's sewage treatment system suffered

a clog, purportedly attributable to flushable wipes, over six years ago in 2012. Significantly, the Second Circuit in *Shain* noted that a year had passed without recurrence of injury in support of the holding that the plaintiff failed to establish a likelihood of future harm. Here, plaintiff is asking the Court to find a likelihood of future injury after over *six* years of its sewage system remaining clog-free. Further, plaintiff does not make any specific allegations regarding the current state of its sewage treatment system, nor has it alleged that the system has experienced any clogging at all since 2012. In addition, like the changed circumstances in *Shain* that contributed to the Second Circuit's determination that no future injury was likely, here too, the circumstances have changed to lessen the risk of any future injury for The Preserve because improved equipment has been installed in the sewage system and residents have been advised not to flush the flushable wipe products. Moreover, because the residents of the forty units in The Preserve incur the costs of any repairs to the sewage treatment system, there is an added incentive for them to follow this directive. As in *Shain* and *Nicosia*, the "accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief." *See Shain*, 356 F.3d at 216.

Plaintiff relies on the cases *City of Wyoming v. Proctor & Gamble Co.*, *et al.*, 210 F. Supp. 3d 1137 (D. Minn. 2016) and *City of Perry, Iowa v. Proctor & Gamble Co., et al.*, 188 F. Supp. 3d 276 (S.D.N.Y. 2016) in support of its argument that it has pled facts sufficient to establish standing. However, both of these cases are distinguishable from the case at bar, most notably because neither case involved a challenge to the injury-in-fact requirement for Article III standing.

In *City of Wyoming*, plaintiffs, who were municipalities in Minnesota and Wisconsin, sought injunctive relief against corporations that manufacture and sell wipes that are labeled as "flushable." 210 F. Supp. 3d at 1145. The *City of Wyoming* defendants moved to dismiss on the grounds that (1) the complaint "[was] not specific enough in that it [did] not detail exactly how [d]efendants caused their injuries" and (2) that "[p]laintiffs' injuries can be traced to numerous different causes, and that [p]laintiffs have not pleaded facts showing that their injuries are caused specifically by 'flushable wipes' instead of something else." *Id.* at 1150-51. As defendants correctly note, the court in *City of Wyoming* was not presented with a challenge to the injury-in-fact requirement for Article III standing, nor did the court address the injury-in-fact requirement. In fact, the court stated that, "even if [p]laintiffs lack standing to pursue their claims of past harm, they still have standing to pursue relief for injuries they imminently expect to suffer when [d]efendants' wipes find their way into their sewer systems. And notably, [d]efendants have not disputed the imminent nature of [p]laintiffs' alleged future injuries." *Id.* at 1152 n.2.

In any event, even had the court in *City of Wyoming* been presented with a challenge to the imminent nature of plaintiffs' alleged future injuries, the factual circumstances of that case are distinguishable from those in the case at bar. Unlike the forty unit homeowners association that operates a single sewage management system, paid for by the residents of the homeowners' association in this case, the plaintiffs in *City of Wyoming* were seven municipalities, one public utilities commission, and one sewage treatment commission across two states that operated a total of 112 lift stations that pumped wastewater to wastewater treatment

facilities. *See* First Amended Class Action Complaint at 3-6, *City of Wyoming v. Proctor & Gamble Co.*, *et al.*, 210 F. Supp. 3d 1137 (D. Minn. 2016) (No. 15-CV-2101). Each of the *City of Wyoming* plaintiffs alleged that it had "incurred expenses associated with the removal of flushable wipes and its lift station and faces the continuing, ongoing threat of future harm from [d]efendants' continued sale and promotion of wipes as 'flushable' and 'sewer and septic safe'" and the complaint alleged that there was "ongoing clean-up of [d]efendants' flushable wipes." *Id.*

Unlike the multitude of public wastewater treatment facilities, serving thousands of residents at issue in *City of Wyoming*, this case involves a single wastewater treatment operation, servicing a forty unit homeowners association, and which is funded by the residents itself through homeowners association fees. Furthermore, unlike the allegation in *City of Wyoming* that there is "ongoing clean-up" of flushable wipes clogs, plaintiff in this case makes no such allegation. Instead, plaintiff points to a single clog, in 2012, that it attributes to flushable wipes, and further alleged in its pleadings and at oral argument, that it has put in place additional mechanisms to prevent future clogging through both equipment in the sewage system and by an ongoing letter directive to its residents.

The circumstances in *City of Perry* are similarly distinguishable from the instant case. In *City of Perry*, plaintiff was a municipality in Iowa, and alleged that "flushable wipes have repeatedly clogged Perry's sewer lines" and that the city "maintains logs that detail its ongoing problems with wipes. The logs indicate the source(s) of the clogs, and have identified flushable wipes." First Amended Complaint at 3, 13, *City of Perry, Iowa v. Proctor &*

*Gamble Co., et al.*, 188 F. Supp. 3d 276 (S.D.N.Y. 2016) (No. 15-CV-8051). Further, the complaint in *City of Perry* alleged that "logs and visual observation reveal that sewage 'grit chambers' were filled with flushable wipes. As a result of [d]efendants' flushable wipes, Perry has suffered numerous sewage back-ups." First Amended Complaint at 13, *City of Perry, Iowa v. Proctor & Gamble Co., et al.*, 188 F. Supp. 3d 276 (S.D.N.Y. 2016) (No. 15-CV-8051). The *Perry* plaintiff also alleged that almost all of the flushable wipes available for sale in the major outlets in Perry and the surrounding areas were manufactured by the named defendants. *City of Perry, Iowa*, 188 F. Supp. 3d at 281. However, the court noted that the plaintiff did not satisfy the injury-in-fact threshold with respect to two of the named defendants because the complaint "include[d] no allegations about the availability *or use* in Perry of any flushable wipes manufactured by PDI or Tufco." *Id.* at 283 (emphasis added).

In the case at bar, in stark contrast to the allegations in *City of Perry*, plaintiff does not allege that it has experienced repeated clogs, numerous back-ups, or any ongoing problems with its sewage treatment plant at all, let alone continuing problems arguably attributable to flushable wipes. As previously discussed, plaintiff alleges only one clog, in 2012, attributable to flushable wipes, and plaintiff conceded at oral argument that it has not performed any tests of its sewage system to determine current levels of clogging and does not even know if residents of The Preserve have continued to flush the flushable wipe products in violation of the directive to the residents.

Plaintiff's reliance on *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) and *Belfiore v. Kimberly-Clark Corp.*, 94 F. Supp. 3d 440 (E.D.N.Y. 2015), is

similarly unavailing. As a threshold matter, the *Kurtz* court was clear that its case, as well as the *Belfiore* case, were "putative class actions by consumers and householders only . . . . The instant consumer cases are distinguished from cases claiming clogging of municipal sewage systems and their machinery." *Kurtz*, 321 F.R.D. at 493–94 (discussing six individual putative class actions brought before the court, including *Belfiore*). In these cases, the named plaintiffs were individual homeowners who flushed wipes labeled as "flushable," and then experienced home plumbing clogs. In denying motions to dismiss challenging Article III standing in both *Kurtz* and *Belfiore*, the court explained:

> To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction.

*Kurtz*, 321 F.R.D. at 541–42 (quoting *Belfiore*, 94 F. Supp. 3d at 445).

As an initial matter, the *Kurtz* and *Belfiore* holding, that plaintiffs had standing to pursue injunctive relief for products they did not intend to purchase again, has been rejected in several district court decisions. *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 328 (E.D.N.Y. 2018) ("[T]hese cases are inconsistent with Article III and with Supreme Court and Second Circuit case law); *see also Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,

148 F. Supp. 3d 285, 291 (S.D.N.Y. 2015) ("Accordingly, in actions brought under consumer protection statutes, many courts have declined to find Article III standing for injunctive relief where the plaintiff 'demonstrated that she is, in fact, unlikely to purchase [the challenged] products again.'") (quoting *Tomasino v. Estee Lauder Cos., Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014)). This Court also disagrees with the analysis in *Kurtz* and *Belfiore*.

In any event, unlike the "consumer and householder plaintiffs" in *Kurtz* and *Belfiore*, the plaintiff in the case at bar attempts (albeit unsuccessfully) to establish standing to seek injunctive relief as the owner and operator of a sewage treatment plant, and relies heavily on cases "claiming clogging of municipal sewage systems and their machinery" in support of its standing argument. *See Kurtz*, 321 F.R.D. at 493–94. As noted above, the *Kurtz* court was explicit that the consumer cases before that court were distinguished from those cases involving municipal sewer system clogs (for which the *Kurtz* court cited *City of Perry* as an example), and this Court finds that any attempt by the plaintiff in this case to rely upon the analysis in *Kurtz* and *Belfiore* to be unpersuasive.

In sum, accepting all allegations in the Complaint as true, the Court concludes that plaintiff has failed to plead any facts from which the Court could conclude that it will suffer harm of *any* kind attributable to flushable wipes, let alone imminent harm sufficient to confer Article III standing. Instead, the Complaint alleges: (1) plaintiff is a homeowners association consisting of only forty units and alleges only one instance of past injury—a single clog in 2012 that was purportedly attributable to flushable wipes; (2) since 2012, plaintiff has made modifications to its sewage treatment system in an attempt to mitigate the damage that

flushable wipes allegedly cause to the system and has issued a directive to all of its residents to cease flushing "flushable wipe" products; and (3) The Preserve residents fund the sewage treatment system themselves through homeowners association dues, which cover maintenance and repairs to the system. As conceded at oral argument, plaintiff could have, but has not, surveyed the residents of The Preserve to see if any household is still flushing these products at all, nor has The Preserve tested its sewage treatment system to see if the system is experiencing any degree of clogging. Thus, plaintiff has not only failed to plead facts showing why it is again at risk of a likely injury from flushable wipes, but has entirely failed to show that flushable wipes are being flushed at all by residents (who have every incentive not to flush the wipes because of the risk of increasing their homeowners association dues to fund repairs to the system), or that the sewage system is compromised in any way after six clog-free years. In other words, even though there is an allegation of past harm, there are insufficient allegations in the current Complaint to support a reasonable inference that there is a substantial risk, or any likelihood, that a clog will occur again. Therefore, because the plaintiff's claimed harm is not "concrete and particularized," but is instead "conjectural or hypothetical," plaintiffs have not alleged an injury-in-fact, and thus, do not have standing. Accordingly, plaintiff's Complaint must be dismissed.[3]

## IV. LEAVE TO RE-PLEAD

Given the dismissal based upon lack of standing, the Court has considered whether plaintiff should be given an opportunity to re-plead. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Because plaintiff may be able to supplement the complaint with additional allegations to support standing, the Court, in its discretion, grants leave to plaintiff to re-plead.

## V. CONCLUSION

For the reasons set forth herein, defendants' joint motion to dismiss the complaint for lack of standing, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, is granted. However, plaintiff is granted leave to re-plead. An amended complaint shall be filed on or before March 29, 2019.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: January 28, 2019
Central Islip, NY

\* \* \*

Plaintiffs are represented by Mark S. Reich and Mario Claudio Lattuga of Robbins, Geller, Rudman & Dowd, 58 South Service Road, Suite 200, Melville, NY 11743. Defendant Costco Wholesale Corporation is represented by Courtney Elizabeth Scott of Tressler LLP, One Penn Plaza, Suite 4701, New York, NY 10119 and John Q. Lewis,

---

[3] Defendants also argue that plaintiffs' Complaint must be dismissed on other grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, defendants also move to strike plaintiff's allegations regarding a nationwide class and stay the case. However, given the dismissal for lack of standing, the Court need not address any other portions of the motions. Those alternative grounds can be raised in a renewed motion if an amended complaint is filed.

Karl A. Bekeny, Michael Ruttinger, and William Berglund of Tucker Ellis LLP, 940 Main Ave, Suite 1100, Cleveland, OH 44113. Defendant CVS Health Corporation is represented by Courtney Elizabeth Scott of Tressler LLC, One Penn Plaza, Suite 4701, New York, NY 10119 and Rebecca Briggs of Hinckley, Allen & Snyder LLP, 100 Westminster Street, Suite 1500, Providence, RI 02903. Defendant Kimberly-Clark Corporation is represented by Brianna Olivia Gallo and Eamon Paul Joyce of Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019. Defendant The Proctor & Gamble Company is represented by Claire Catalano Dean, Cortlin Lannin, Emily Henn, and Henry Liu of Covington & Burling LLP, 850 Tenth Street, NW, Washington, DC 20001 and One Front Street, San Francisco, CA 94111 and 333 Twin Dolphin Drive, Suite 700, Redwood Shores, CA, CA 94065. Defendant Target Corporation is represented by Denise Dickerson of Sutter O'Connell, 1301 East Ninth Street, 3600 Erieview Tower, Cleveland, OH 44114. Defendant Walgreen Boots Alliance, Inc. is represented by Michael P. Mezzacappa and Stephanie B. Finding Gitnick of Kaufman, Borgeest & Ryan LLP, 200 Summit Lake Drive, 1st Floor, Valhalla, NY 10595. Defendant Wal-Mart Stores, Inc. is represented by Steven R. Kramer and Kelly Robreno Koster of Ecker, Seamans, Cherin & Mellott LLC, 10 Bank Street, Suite 700, White Plains, NY 10606.